633 A.2d 225

**Lawrence H. BAIRD**

v.

**TOWNSHIP OF NEW BRITAIN, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1993.

Decided Oct. 27, 1993.

334

George M. Bush, for appellant.

Peter F. Blust and Neil E. Jokelson, for appellee.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

The Township of New Britain (Township) appeals from an order of the Court of Common Pleas of Bucks County (trial court) permanently enjoining it from enforcing New Britain Township Ordinance No. 92–10–2 (Ordinance) against Lawrence H. Baird (Baird) who owns property in New Britain Township on which he target shoots.

Baird is the owner of approximately 12 acres of property located at 191 Sellersville Road, Chalfont, New Britain Township, Bucks County, Pennsylvania. He has owned this property since 1982 when he purchased the land from his brother-in-law. The land is rectangular in shape and is approximately 190 yards by 288 yards. One year prior to purchasing the property, Baird erected a shooting range on a portion of the property for his personal use, as well as for his guests so that they could practice shooting targets and sharpen their skills in preparation for their hunting expeditions.[1] Behind the shooting range, Baird constructed a wall of timbers measuring ten feet high consisting of railroad ties and barn timbers, and piled dirt behind the wall of timbers approximately 18 feet in depth so that any projectiles penetrating the wall of timbers would bury themselves about one foot into the dirt. The westernmost edge of the shooting range's earthen backstop is approximately 100 feet from Baird's property line, and the discharge area is approximately 60 yards from the backstop. Approximately 200 yards directly in line beyond the target range on neighboring property not owned by Baird is a

---

1. Baird is a big game hunter who travels to Africa and Canada to hunt and uses his target range to sharpen his shooting skills. He owns and shoots over 20 guns, including a .44 magnum, a .338 Winchester mag, a Browning semi-automatic weapon, and a seven-millimeter magnum rifle which uses a 185 grain Spitzer boat-tail shell. This particular shell is used for long range shooting on large animals and can travel at least two miles when the gun is fired at a 45–degree angle.

residence which was built in 1985. Baird and his guests have been shooting targets at this shooting range on his property since its erection in 1981.

On October 13, 1992, the New Britain Township's Board of Supervisors signed into law Ordinance No. 92–10–2 prohibiting the discharge of any firearm within the Township due to the increasing population and the uncontrolled use of firearms within the Township.[2] While activities involving firearms on parcels of 10 acres or more within the Township were exempted from that prohibition, they were not exempted if they involved discharges within 100 yards of a building or property line.[3]

■■■ Baird filed a complaint in the trial court alleging, *inter alia*, that because he used the target range to sharpen his skills for the antlered deer season, inferentially, the Township was preempted from enacting the Ordinance.[4] After a hearing was held, the trial court suspended the Ordinance as it

2. The Ordinance was adopted following a series of public hearings which the Township Supervisors held as a result of hearing about numerous incidents involving the discharge of firearms within the Township which were hazardous and frightening to its residents. At the time of the hearings, a man in a neighboring Township actually shot a woman while he was shooting at a groundhog.

3. The other exemptions included authorized law enforcement officers acting in the line of duty; hunting or other activities regulated by and conducted in accordance with the Game and Wildlife Code; indoor commercial shooting ranges; use of firearms in defense of human life; and farmers protecting their crops or livestock with other than a single-projectile firearm.

4. Preemption was never specifically raised in Baird's complaint or in his petition for a preliminary injunction which he also filed with the trial court. Paragraph 9 of the complaint states: "There exists many other flaws in the Township's new Ordinance which shall not be gotten into with any detail at this state of these proceedings; plaintiff does, however, herewith expressly reserve the right to amend this complaint at such time and with such detail as may be called for as these proceedings develop." Baird never amended his complaint to raise the issue of preemption. His preliminary injunction petition did indicate that he used the range for the antlered deer season. From this we suppose the trial court reached the preemption issue. Baird also alleged in the complaint that the Ordinance unjustly took away his property rights and constituted a taking without just compensation. That issue, however, was not argued below or pursued on appeal.

solely applied to Baird's property relying on 34 Pa.C.S. § 2507(b)(4)(i). 34 Pa.C.S. § 2507(a)(1) which precedes that section provides:

(a) **General rule.**—It is unlawful for any person during the open season for the taking of any big game other than turkey to:

(1) Shoot at any mark or target other than legal game or wildlife with a firearm of any kind or a bow and arrow.

\* \* \* \* \* \*

(b) **Exceptions.**—This section shall not be construed to apply in any manner to:

(4) Shooting at a properly constructed target or mark or a dead tree protected by a natural or artificial barrier so that the ball, bullet, or arrow cannot travel more than 15 yards beyond the target aimed at, after making due allowance for deflection in any direction not to exceed an angle of 45 degrees. Target shooting shall only be lawful when it is done:

(i) Upon property owned by the shooter or by a guest of the property owner.

The trial court found that because subsection (b)(4) dealt with target shooting, it preempted local regulation of any target shooting. As a result, the trial court issued a final decree stating: "AND NOW, this 9th day of March, 1993, New Britain Township is permanently enjoined from trying to enforce Ordinance # 92–10–2 against Plaintiff's target area and shooting relative thereto on his land at 191 Sellersville Road, New Britain Township, Bucks County Tax Parcel # 26–001–096–001."[5] The Township then filed this appeal.

In determining that the Ordinance was preempted by the Game and Wildlife Code, the trial court relied on our holding

5. Whether the trial court issued a preliminary or permanent injunction is unclear. It initially issued a preliminary injunction on November 25, 1992, without a hearing. By its own terms under Pa.R.C.P. No. 1531, it would expire within five days. The trial court set a hearing on the preliminary injunction for December 7, 1992. As a result of that hearing, the trial court issued an injunction (not styled as a preliminary injunction) suspending the Ordinance. However, the order invited the parties to file within 20 days requests for findings of fact, conclusions of law and memorandums of law. The parties filed their requests and on

in *Duff v. Township of Northampton,* 110 Pa.Commonwealth Ct. 277, 532 A.2d 500 (1987), *aff'd,* 520 Pa. 79, 550 A.2d 1319 (1988). *Duff* dealt with an ordinance which directly conflicted with the Game and Wildlife Code on the subject of hunting in a safety zone. The ordinance prohibited hunting in a designated safety zone except in areas of 20 acres or more with approval of the chief of police. 34 Pa.C.S. § 2505 of the Game and Wildlife Code already proscribed a safety zone to prohibit hunting or discharging firearms within 150 yards or 14.6 acres of any residence. Because the ordinance was in direct conflict with the statute, we found that the ordinance was preempted. However, that is not the case here because the Ordinance is not in conflict with the Game and Wildlife Code. Nothing in the Township's Ordinance regulates hunting—it only regulates target shooting and firearm discharges that are unrelated to hunting.

As to when a local government is preempted from legislating in an area, we stated in *Duff:*

> The state is not presumed to have preempted a field merely by legislating in it. The General Assembly must clearly show its intent to preempt a field in which it has legislated. *Retail Master Bakers Association v. Allegheny County,* 400 Pa. 1, 161 A.2d 36 (1960); *United Tavern Owners v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868 (1971) (Opinion Announcing the Judgment of the Court.) The test

March 17, 1993, the trial court issued an opinion and order. Although characterizing the matter before it as a preliminary injunction, the trial court issued a final order and a permanent injunction.

When the March 17, 1993 decree was issued, however, no responsive pleading had been filed to the complaint and there was no stipulation by the parties that the matter was to be considered a permanent injunction. Since there were no outstanding questions of fact, it appears that the parties treated the injunction as a decree nisi and the request for findings of fact and conclusions of law as exceptions. Because the trial court denominated its March 17, 1993 order as a Final Decree and the parties treated it as such, we will review this matter as an appeal from a permanent injunction. Our scope of review from the grant of a permanent injunction is limited to determining whether the trial court abused its discretion or committed an error of law. *Hempfield Township v. Hapchuk,* 153 Pa.Commonwealth Ct. 173, 620 A.2d 668 (1993).

for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or "indicate[ ] an intention on the part of the legislature that it should not be supplemented by municipal bodies." *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951); *Harris–Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966). If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted.

*Duff,* 110 Pa.Commonwealth Ct. at 285–286, 532 A.2d at 503.

■ *Duff* further provided that to determine whether a conflict exists between a state and local law, where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable. Municipalities in the exercise of the police power may regulate activities by imposing restrictions which are in addition to and not in conflict with statutory regulations. However, if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid. *Duff,* 110 Pa.Commonwealth Ct. at 286–287, 532 A.2d at 504.

The Township contends that the trial court erred in holding under *Duff* that Section 2507 of the Game and Wildlife Code preempts it from enacting any Ordinance regulating target shooting because the Game and Wildlife Code clearly does not regulate the general discharge of firearms unrelated to hunting and it was not the intention of the General Assembly for it to do so. We agree with the Township because the language in that section is specifically directed at persons engaged in target shooting during open hunting season only.

34 Pa.C.S. § 2507 begins by providing that it is unlawful for any person *during the open season for the taking of any big*

*game other than turkey* to shoot at any mark or target other than legal game or wildlife with a firearm of any kind or a bow and arrow.[6]  Subsection (b)(4), however, is an exception to the general prohibition against target shooting during hunting season by allowing any target practice during that time at an approved target range.  While this subsection makes an exception for target shooting at a properly constructed target range during hunting season, it does not regulate the operation of target ranges.  Because the Game and Wildlife Code does not address the operation of target ranges, local regulation can in no way be considered preempted.

      ■■■  Baird, however, argues that even if 34 Pa.C.S. § 2507 does not preempt the local Ordinance, the Ordinance is preempted by another section of the Game and Wildlife Code—34 Pa.C.S. § 2505.  Baird explains that while the Ordinance prohibits the discharge of a firearm within 100 yards of a property line or building, 34 Pa.C.S. § 2505 already regulates that distance to be within 150 yards from any dwelling.  That section provides:

> (a) General Rule.—Except as otherwise provided in this title, it is unlawful for any person, other than the lawful occupant, *while hunting game or wildlife, taking furbearers of any kind, or pursuing any other privilege granted by this title,* to hunt for, take, trap, pursue, disturb or otherwise chase any game or wildlife or to discharge, for any reason, any firearm, arrow or other deadly weapon within or through a safety zone, or to shoot at any game or wildlife while it is within the safety zone without the specific advance permission of the lawful occupant thereof.

> (c) Definition.—As used in this section, the term **"safety zone"** means the area within 150 yards around and that area which is below the highest point of any occupied dwelling house, residence, or other building or camp occu-

---

6.  "Open season" is defined at 34 Pa.C.S. § 102 as the indicated periods of the calendar year and the daily shooting hours during which game or wildlife may be legally hunted, taken or killed and includes both the first and the last day of the season or period of time designated by this title or by regulation of the commission.

pied by human beings, or any barn, stable, or other building used in connection therewith or any attached or detached playground of any school, nursery school or day-care center.

Again, Baird ignores the fact that 34 Pa.C.S. § 2505 also deals only with the area in which it is safe to discharge a firearm for purposes of hunting game or wildlife, not general target practice whether or not related to hunting.[7]

Because the Ordinance is intended to protect Township residents from the random discharge of firearms unrelated to hunting, and the Ordinance specifically exempts hunting and other activities regulated by the Game and Wildlife Code, we find that it is not in conflict with or preempted by the Game and Wildlife Code.

Accordingly, the decision of the trial court is reversed.

## ORDER

AND NOW, this 27th day of October, 1993, the order of the Court of Common Pleas of Bucks County, dated March 9, 1993, at No. 92–11019, is reversed.

7. Our holding was presaged by the Attorney General's Opinion No. 17 which was issued on April 16, 1974. That Opinion was issued in response to the Executive Director of the Pennsylvania Game Commission's request for an opinion on the right of local municipalities to enact firearms ordinances as they related to hunting. He stated the following at pages 3 and 4 of the opinion:

Inasmuch as State legislation has pre-empted the field in terms of providing regulations by the Game Commission to promote public safety, any attempt by the local municipalities to control or limit hunting within their boundaries, either directly through prohibiting hunting or indirectly through restricting the discharge of firearms within the municipality, must be stricken down as in contravention of the State's regulatory control of hunting through the Game Law, 34 P.S. § 1311.101. *It is noted, however, that local ordinances which prescribe the discharging of firearms within the municipal boundaries can still be valid so long as they are construed as prohibiting the discharge of firearms within the municipality EXCEPT where the firearm is lawfully used in hunting as provided for by the Game Law and by the rules and regulations of the Game Commission. If construed in this manner, such local ordinances would not conflict with the Game Law and would not, therefore, be invalid.*

While opinions of the Attorney General are not binding on this court, they are entitled to great weight. *Herskovitz v. State Civil Service Commission,* 111 Pa.Commonwealth Ct. 427, 534 A.2d 160 (1987).