### The PHILADELPHIA HOUSING AUTHORITY, Appellant,

v.

### Elizabeth SNYDER.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.

Decided Feb. 5, 2003.

Ira N. Richards, Philadelphia, for appellant.

Elizabeth F. Abrams, Philadelphia, for appellee.

Before COLINS, President Judge, and McGINLEY, J., SMITH–RIBNER, J., FRIEDMAN, J., LEADBETTER, J., COHN, J., and SIMPSON, J.

OPINION BY Judge FRIEDMAN.[1]

The Philadelphia Housing Authority (Authority) appeals from the May 24, 2001, order of the Court of Common Pleas of Philadelphia County (trial court), which: (1) denied the Authority's complaint seek-

---

1. This opinion was reassigned to the author on November 6, 2002.

ing injunctive relief against Elizabeth Snyder (Snyder), who resides in and leases a housing unit from the Authority; (2) ordered Snyder to bar her son, Robert, from visiting or residing on the premises; and (3) prohibited Snyder's neighbors from using her telephone. We vacate and remand.

Snyder resides at 4732 Charles Terrace, Philadelphia, Pennsylvania, which is owned by the Authority. Snyder lives on the premises with her four grandchildren, whose ages are twenty-five, twenty, thirteen and one. On March 26, 2001, the Authority's police officers made purchases of crack cocaine and heroin inside the premises. Robert Snyder, Snyder's son, sold the controlled substances to the police officers.

On March 27, 2001, the police executed a search warrant for the premises. The police arrested Robert Snyder outside the premises and recovered twenty-five packets of heroin from his person. In addition, the police arrested a juvenile inside the premises on the second floor and recovered fifty-one packets of marijuana from a dresser in the second floor bedroom where the juvenile was using the telephone. The juvenile was Snyder's neighbor. Neither Robert Snyder nor the juvenile lives with Snyder.

As a result of these events, the Authority simultaneously filed a complaint and petition for preliminary injunction on April 20, 2001. In the petition for preliminary injunction, the Authority requested that the trial court evict Snyder and issue a rule to show cause why a preliminary injunction for possession of the property by the Authority should not be entered. In the complaint, the Authority alleged that Snyder's actions in permitting illegal drugs to be sold on Authority property violated,

*inter alia,* the Expedited Eviction of Drug Traffickers Act (Act).[2] The Authority requested that the trial court schedule an expedited hearing, grant the Authority immediate possession of Snyder's premises, grant the Authority permission to immediately evict all individuals residing or staying in the premises, and grant such other relief as the trial court deemed just and equitable.

On April 23, 2001, upon consideration of the verified complaint in equity and the petition for injunctive relief, the trial court issued a rule to show cause, returnable on May 8, 2001, why an injunction should not be issued. Thereafter, a hearing on the rule to show cause was held by the trial court on May 24, 2001. During the hearing, the Authority presented testimony from a police officer to prove its allegations against Snyder. Snyder testified in rebuttal.

At the conclusion of the hearing, the trial court announced that it was going to deny eviction with the condition that Snyder is not allowed to permit the neighborhood juveniles to come into her unit and use the telephone, thereby creating an opportunity for illegal activity. The trial court also barred Robert Snyder from residing in or visiting the premises. Accordingly, counsel for the Authority and counsel for Snyder drafted the appropriate order for the trial court. Thereafter, the trial court entered the following order:

> AND NOW, this 24th day of May, 2001, upon consideration of plaintiff's complaint and any response thereto, it is hereby ordered and decreed that the Complaint is Denied.
>
> 1. Snyder must bar her son Robert Mincer aka Snyder from visiting or residing in the premises.

**2.** Act of October 11, 1995, P.L. 1066, *as amended,* 35 P.S. §§ 780–151—780–179.

2. No neighbors to use the telephone. This appeal by the Authority followed.

Initially, we must address the procedure employed by the trial court, as well as its subsequent order disposing of this equity matter, with regard to our scope of review. Based upon our review of the transcript of the May 24, 2001, hearing on the injunction, it is clear that, after the conclusion of the testimony and argument by counsel, the trial court ruled on the merits of the Authority's complaint. It is also clear from the transcript, and the subsequent order drafted by the parties for the trial court's signature, that the Authority and Snyder, by not entering an objection, consented to the trial court's adjudication of this equity matter on the merits. *See Baird v. Township of New Britain,* 159 Pa.Cmwlth. 333, 633 A.2d 225 (1993), *appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994) (noting that, where the trial court characterizes the matter before it as a preliminary injunction but issues a permanent injunction, and the parties treat it as such, we will review the matter as an appeal from a permanent injunction).

 Accordingly, we will review the trial court's order as a final order disposing of the Authority's complaint.[3] Thus, this court's scope of review of the trial court's final order entered in this equity action is limited to determining whether the trial court committed an error of law or abused its discretion. *Earl Township v.*

*Reading Broadcasting, Inc.,* 770 A.2d 794 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 637, 793 A.2d 910 (2002).

 In this appeal, the Authority argues that the trial court erred by failing to order Snyder's immediate eviction once the Authority succeeded in proving that: (1) drug-related criminal activity occurred on and within Snyder's premises; (2) Snyder's premises was used in furtherance of and to promote drug-related criminal activity; and (3) Snyder's guests had engaged in drug-related criminal activity on and in the immediate vicinity of the leased residential premises. The Authority contends that Snyder did not meet her burden of proving that she was not involved in, and did not have knowledge or reason to know of, the drug-related criminal activity.[4]

Pursuant to section 2(11) of the Act, the Act "is intended to provide a legal process to ensure prompt eviction of persons who engage in specified drug-related criminal activity on or near leased residential premises or who permit others to engage in such criminal activity." 35 P.S. § 780–152(11). The Act is "further intended to authorize courts to order persons other than tenants who engage in certain drug-related criminal activity to stay away from the location where the criminal activity occurred." *Id.* A civil action may be brought by a landlord to evict or remove tenants or other persons from leased resi-

---

3. We note further that, in its brief filed with this court in support of its appeal, the Authority states that the trial court ruled on the Authority's complaint and not on its petition for preliminary injunction; therefore, the standards for granting a motion for preliminary injunction should not be applied in this matter.

4. We reject the Authority's contention that the trial court erred by requiring the Authority to prove that Snyder had knowledge of the drug-related criminal activity. It is clear from the transcript of the May 24, 2001, hearing that

the trial court was aware of the affirmative defense provided by the Act and that the burden was upon Snyder to prove the same by a preponderance of the evidence.

We also reject the Authority's contention that Snyder was barred from raising an affirmative defense because she did not file a responsive pleading to the Authority's complaint. The Authority did not object when Snyder's counsel raised the defense at the May 24, 2001, hearing; therefore, any objection at this stage has been waived.

dential premises. Sections 4 and 5 of the Act, 35 P.S. §§ 780–154 and 780–155. Section 6(a) of the Act, 35 P.S. § 780–156(a), sets forth the grounds for complete eviction,[5] and provides as follows:

(a) **Grounds for complete eviction.**—Subject to the provisions of sections 7 [Affirmative defense or exemption to a complete eviction] and 25 [Probationary tenancy], the court shall order the immediate eviction, as set forth in sections 12(b) [Expedited hearings] and 14 [Expedited proceedings], of a tenant if it finds any of the following:

(1) Drug-related criminal activity has occurred on or within the individual rental unit leased to the tenant.

(2) The individual rental unit leased to the tenant was used in any way in furtherance of or to promote drug-related criminal activity.

(3) The tenant, any member of the tenant's household or any guest has engaged in drug-related criminal activity on or in the immediate vicinity of the leased residential premises.

(4) The tenant, with knowledge that a person has been removed and barred from the leased residential premises under this act, has given permission to or invited a person to return or reenter any portion of the leased residential premises.

(5) The tenant has failed to notify law enforcement or public housing authorities immediately upon learning that a person who has been removed and barred from the tenant's individual rental unit under this act has returned to or reentered the tenant's individual rental unit.

Section 7 of the Act, 35 P.S. § 780–157, governs affirmative defenses or exemptions to a complete eviction and provides, in pertinent part, as follows:

(a) **Affirmative defense.**—The court may refrain from ordering the complete eviction of a tenant under section 6(a), if the tenant has established that the tenant was not involved in the drug-related criminal activity and that the tenant:

(1) did not know or have reason to know that drug-related criminal activity was occurring on or within the individual rental unit, that the individual rental unit was used in any way in furtherance of or to promote drug-related criminal activity or that any member of the tenant's household or any guest has engaged in drug-related criminal activity on or in the immediate vicinity of any portion of the leased residential premises;

(2) had done everything that could reasonably be expected in the circumstances to prevent the commission of the drug-related criminal activity; or

(3) had promptly reported the drug-related criminal activity to appropriate law enforcement authorities.

. . . .

(c) **Burden of proof.**—The burden of proof for the affirmative defense set forth in subsection (a) shall be by a preponderance of the evidence. . . .

■ To meet her burden under section 7 of the Act, Snyder testified that she had no idea that anybody was selling drugs at any time from her premises. (R.R. at 52a.) She further testified that she did not see any drugs or anybody with any drugs inside or about the area of her premises. (R.R. at 52a.) Snyder also testified that the juvenile that was arrested inside her premises had been visiting her since he was a little boy and that he had come over to use her telephone. (R.R. at 54a.) She testified further that she told the juvenile to use the telephone on the

**5.** Section 3 of the Act defines "complete eviction" as "[t]he eviction and removal of a tenant and all members of the tenant's household." 35 P.S. § 780–153.

second floor because she was watching television. (R.R. at 54a.) Snyder testified further that her son visits her every day at four o'clock. (R.R. at 56a.) In addition, Snyder testified that all of the grandchildren who live with her were out of the premises on March 27, 2001, except for the one-year old, who was sitting on her lap. (R.R. at 62a–63a.)

Based on the evidence presented, the trial court concluded that "the granting of an injunction to evict five people, two of whom are children, from their home when only one *may have acquiesced* to the drug related activities, is not an appropriate remedy." [6] (Trial court op. at 3; R.R. at 4a) (emphasis added). However, the question before the trial court was *not* whether any of the five people may have acquiesced to the drug activities; the question was whether Snyder "did not know or have reason to know that drug-related criminal activity was occurring on or within the individual rental unit...." 35 P.S. § 780–157(a)(1). The trial court did not make any finding in that regard.[7]

■ Although Snyder testified that she did *not* know about the drug-related activity and that she saw *no* signs of such activity that would have given her reason to know about it, there is other evidence which, if believed, might suggest otherwise. It is not the province of this court to make credibility determinations, resolve conflicts in the evidence or make findings of fact. *See Moody v. Philadelphia Housing Authority,* 673 A.2d 14 (Pa.Cmwlth. 1996). Accordingly, we vacate the trial

court's order and remand this case to the trial court for the making of appropriate findings of fact and conclusions of law.

### ORDER

AND NOW, this 5th day of February, 2003, the order of the Court of Common Pleas of Philadelphia County (trial court), dated May 24, 2001, is hereby vacated, and this case is remanded to the trial court for the making of appropriate findings of fact and conclusions of law.

Jurisdiction relinquished.

---

6. At the hearing, the trial court stated, "I'm not sure that I see evicting four people who were not ... involved and only one of whom is *suggested to have acquiesced* to this illegal activity is going to accomplish your goal." (R.R. at 63a) (emphasis added).

7. It is impossible to determine whether the trial court made an implicit finding regarding Snyder's awareness of the drug-related activity. On the one hand, we could reasonably

conclude that, because the trial court chose not to evict Snyder, the trial court implicitly found that she did not know or have reason to know about the drug-related activity. On the other hand, we could reasonably conclude that, because the trial court stated one of the residents may have acquiesced to the drug-related activity, the trial court implicitly found that Snyder knew about the activity.