**COMMONWEALTH of Pennsylvania, by the CITY OF ALLENTOWN**

v.

**The DOWN LOW NIGHTCLUB, The Dravecz Corporation, and Geza Frey, Sr., Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2010.

Decided March 12, 2010.

John P. Karoly, Jr., Allentown, for appellant, The Down Low Nightclub.

Martin J. Danks, Allentown, for appellee.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Geza Frey, Sr., The Dravecz Corporation, and The Down Low Nightclub (hereinafter collectively referred to as "The Down Low") appeal from the April 24, 2009 Final Injunction and Order of Court entered by the Court of Common Pleas of Lehigh County (trial court) which, *inter alia*, enjoined The Down Low from operating for a period of one year. We affirm.

The Dravecz Corporation and The Down Low are owned by Geza Frey, Sr. The Down Low advertises as a weekend after hours non-alcoholic dance club and is located at 333–335 Hamilton Street, Allentown, Pennsylvania. The Down Low does not possess a license to sell alcoholic beverages in the Commonwealth of Pennsylvania.

On March 10, 2008, the City of Allentown (Allentown), in the name of the Commonwealth of Pennsylvania, filed a complaint with the trial court, pursuant to Section 611 of the Liquor Code,[1] request-

---

1. Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 6–611. Section 611 governs nuisances and actions to enjoin nuisances, and provides as follows:

    (a) Any room, house, building, boat, vehicle, structure or place, except a private home, where liquor, alcohol or malt or brewed beverages are manufactured, possessed, sold, transported, offered for sale, bartered or furnished, or stored in bond, or stored for hire, in violation of this act, and all such liquids, beverages and property kept or used in maintaining the same, are hereby declared to be common nuisances, and any person who maintains such a common nuisance shall be guilty of a misde-

    meanor and, upon conviction thereof, shall be subject to the same penalties provided in section four hundred ninety four of this act.

    (b) An action to enjoin any nuisance defined in this act may be brought in the name of the Commonwealth of Pennsylvania by the Attorney General, by the Pennsylvania State Police through its Bureau of Liquor Control Enforcement, by the municipality wherein the establishment is located, by the district attorney of the proper county or by a person who resides or has a place of business within five hundred feet of the location of the alleged nuisance. Such action shall be brought and tried as an action in equity and may be brought in any court

ing that The Down Low be enjoined for at least one year from occupying or using the premises upon which The Down Low was located and operated. On May 14, 2008, Allentown filed a motion for a preliminary injunction seeking to have The Down Low declared a nuisance and closed pending a final injunction hearing. Based on the evidence presented at the August 18, 2008 hearing on the motion for a preliminary injunction, the trial court found as follows.

On June 5, 2004, Jeremy Burton, a bartender at The Down Low, illegally sold an alcoholic beverage to an undercover officer of the Pennsylvania Bureau of Liquor Control Enforcement. Frey admitted that there was alcohol in a locked refrigerator behind the bar. Burton was convicted for the illegal liquor sale.

On May 6, 2006, Allentown police officers uncovered an illegal dogfighting operation on the premises of The Down Low. Both the organizers and the spectators of the illegal dog fight were arrested and prosecuted. Frey was not present in The Down Low when the police discovered the dog fighting on May 6, 2006.

Roderick Jackson, a Liquor Control Officer with the Pennsylvania State Police, witnessed illegal sales of alcohol at The Down Low on several occasions in 2007; specifically, on March 11, 2007, June 3, 2007, June 23, 2007, Jackson purchased an alcoholic drink at The Down Low. Frey was present during the foregoing sales of alcohol and despite his denials, Frey knew alcohol was being sold at The Down Low each time Jackson purchased alcohol.

having jurisdiction to hear and determine equity cases within the county in which the offense occurs. If it is made to appear, by affidavit or otherwise, to the satisfaction of the court that such nuisance exists, a temporary writ of injunction shall forthwith issue, restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the proceedings. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the liquids, beverages or other things used in connection with the violation of this act constituting such nuisance. No bond shall be required in instituting such proceedings brought in the name of the Commonwealth by the Attorney General, the Pennsylvania State Police through its Bureau of Liquor Control Enforcement, the municipality where the establishment is located or the district attorney of the proper county. Where such proceedings are brought by a person, the court, upon application of the defendant and prior to any injunction being issued, may direct the plaintiff to post bond in such amount as the court may find to be reasonable and sufficient. It shall not be necessary for the court to find the property involved was being unlawfully used, as aforesaid, at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquor, alcohol or malt or brewed beverage shall be manufactured, sold, offered for sale, transported, bartered or furnished, or stored in bond, or stored for hire in such room, house, building, structure, boat, vehicle, or place, or any part thereof.

(c) Upon the decree of the court ordering such nuisance to be abated, the court may, upon proper cause shown, order that the room, house, building, structure, boat, vehicle or place shall not be occupied or used for one year thereafter, but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant or occupant thereof shall give bond with sufficient surety to be approved by the court making the order in the penal and liquidated sum of not less than five thousand dollars ($ 5,000.00), payable to the Commonwealth of Pennsylvania, for use of the county in which said proceedings are instituted, and conditioned that neither liquor, alcohol, nor malt or brewed beverages will thereafter be manufactured, sold, transported, offered for sale, bartered or furnished, or stored in bond, or stored for hire therein or thereon in violation of this act, and that he will pay all fines, costs and damages that may be assessed for any violation of this act upon said property.

Jackson notified the Allentown Police Department and Rafael Luis Sanchez was arrested and later convicted for the illegal liquor sales.

On January 14, 2007, February 4, 2007, March 11, 2007, April 21, 2007, January 12, 2008, and March 2, 2008, the Allentown Police Department responded to reports of assault and criminal activity at The Down Low. On February 11, 2007, April 8, 2007, September 23, 2007, and January 1, 2008, the police responded to reports of fights at The Down Low.

On August 22, 2008, the trial court entered an order granting the preliminary injunction and enjoining Frey, The Dravecz Corporation and The Down Low from conducting or operating the dance/music club known as the "Down Low" until further order of court in that The Down Low was a common nuisance pursuant to Section 611 of the Liquor Code. The August 22, 2008 preliminary injunction order further directed that, until further order of court, the business establishment located on the first floors and basement of 333–335 Hamilton Street shall not be occupied or used for any business purpose.

On March 11, 2009, Allentown filed a motion for contempt. Hearings on Allentown's complaint, request for final injunction and motion for contempt were conducted on March 13, and 30, 2009. The trial court found that Frey conducted business at The Down Low while the preliminary injunction was in effect, on November 15, 2008, November 16, 2008, February 1, 2009 and February 22, 2009, by admitting patrons on each of these dates for money or some other consideration to conduct dance, music and other events. As such, the trial court found The Down Low in contempt for violating the August 22, 2008 preliminary injunction order enjoining the club from operation.

The trial court also found, based on the evidence presented at the hearing on the request for preliminary injunction and the final hearings, that alcoholic beverages were possessed and sold at The Down Low, an establishment that lacked a liquor license, on June 5, 2004, and numerous occasions in 2007. Because of these incidents, the trial court found that The Down Low is a common nuisance under Section 611 of the Liquor Code, 47 P.S. § 6–611. In deciding whether to close The Down Low, the trial court not only considered the illegal sale of alcohol but also the criminal activity that occurred inside and outside in the immediate vicinity of The Down Low. The trial court also took note of the increased security that The Down Low had put in place.

The trial court determined that the nuisance must be abated and that such abatement can occur for a period of up to one year under Section 611(c) of the Liquor Code, 47 P.S. § 6–611(c). Because Frey and The Down Low had not yet complied with the order enjoining the business activities at 333–335 Hamilton Street, the trial court determined that the abatement of the nuisance shall last one year from the date of its order granting final injunctive relief.

Thus, by order of April 24, 2009, the trial court declared The Down Low a common nuisance under Section 611 of the Liquor Code, declared the injunction issued by the court on August 22, 2008 a final injunction and enjoined Frey, The Dravecz Corporation, and The Down Low for a period of one year from April 24, 2009, from conducting or operating the dance/music club known as "Down Low" or known by any other name or by no name at all at 333–335 Hamilton Street and from conducting or operating any dance or music events for money or other consideration whether associated with a business

name or not at 333–335 Hamilton Street. The trial court also granted the motion for contempt and ordered Frey, The Dravecz Corporation and The Down Low to pay, jointly and severally, all Sheriff's costs pertaining to the securing of the subject premises in accordance with the April 24, 2009 final injunction and order. This appeal followed.[2]

Herein, The Down Low raises the following issues for our review:

1. Whether the trial court violated the one year statutory maximum closure limitations by enjoining The Down Low's operations for 20 months;

2. Whether The Down Low was properly subject to the nuisance provisions of Section 611 of the Liquor Code, 47 P.S. § 6–611, when the club was not a licensee and no agent, servant, or employee of the club ever engaged in the selling, distribution, or provision of any malt-brewed or alcoholic beverages; and

3. Whether the subject litigation is void *ab initio* because it was not authorized by the Mayor of the City of Allentown as required by the Optional Home Rule Charter.

In support of the first issue raised in this appeal, The Down Low argues that Section 611 of the Liquor Code only permits an establishment to be enjoined from operating for a period of one year. The trial court's August 22, 2008 preliminary injunction order enjoined The Down Low from operating until further order of court. At the time the trial court entered the April 24, 2009 final injunction and order, The Down Low had been closed for a period of 8 months. Thus, The Down Low contends, the trial court's April 24, 2009 final injunction and order essentially

closed The Down Low for 20 months, which violates Section 611 of the Liquor Code.

The Down Low argues further that Section 611 also does not permit a court to put a party out of his property until after a final hearing. The Down Low argues that the trial court's August 22, 2008 preliminary injunction order went further than the statute permits by providing that the business establishment located on the first two floors and basement of 333–335 Hamilton Street shall not be occupied or used for any business purpose. The Down Low argues that contrary to the trial court's finding that it operated after the issuance of the preliminary injunction, it remained closed during the 8 month period between the issuance of the preliminary and final injunctions. The Down Low contends that it was open on only 4 occasions during that 8 month period for private functions with no access available to the public. Since the August 22, 2008 preliminary injunction order deprived The Down Low of the use and possession of the property before the final hearing, The Down Low contends that the trial court should have allowed credit for the 8 months that The Down Low was closed down. We disagree.

■ As correctly stated by the trial court, Section 611 of the Liquor Code separately addresses the duration of both preliminary and permanent injunctions. Section 611(b) pertains to temporary or preliminary injunctions and provides that "[i]f it is made to appear, . . . , to the satisfaction of the court that such nuisance exists, a temporary writ of injunction shall forthwith issue, restraining the defendant from conducting or permitting the continu-

2. Our scope of review from the grant of a permanent injunction is limited to determining whether the trial court abused its discretion or committed an error of law. *Baird v.*

*Township of New Britain,* 159 Pa.Cmwlth. 333, 633 A.2d 225 (1993), *petition for allowance of appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994).

ance of such nuisance until the conclusion of the proceedings." 47 P.S. § 6–611(b). Section 611(c) pertains to permanent injunctions and provides that "[u]pon the decree of the court ordering such nuisance to be abated, the court may, upon proper cause shown, order that the . . . structure . . . or place shall not be occupied or used for one year thereafter. . . ." 47 P.S. § 6–611(c). Therefore, the trial court did not err in the April 24, 2009 final injunction and order by enjoining Frey, The Dravecz Corporation, and The Down Low for a period of one year from April 24, 2009, from conducting or operating the dance/music club known as "Down Low".

■ Moreover, the trial court found that the preliminary injunction issued on August 22, 2008 failed to abate the nuisance at The Down Low. The trial court specifically found that The Down Low continued to conduct business at 333–335 Hamilton Street after the trial court issued the August 22, 2008 preliminary injunction order enjoining it from operation. It was well within the trial court's function as fact finder to reject The Down Low's evidence as not credible that it operated on a limited basis for private non-business functions without incident during the 8 months that the preliminary injunction was in effect.[3] The trial court pointed out that parties occurred after the preliminary injunction was issued. Specifically, parties were held on the evening of November 15, 2008, to the early morning hours of November 16, 2008, as well as February 1, 2009 and February 22, 2009, resulting in: (1) crowds inside and outside the club; (2) the queu-ing of people to enter the club; (3) the posting of a bouncer at a rear door to control access to the club; (4) the employment of bouncers inside the club; (5) the patting down of people for weapons as they entered the club; (6) the parties taking place at the club during the morning hours; (7) the police observing individuals leaving the club between 4:00 a.m. and 5:00 a.m.; and (8) the gathering of 150 to 200 people in the early morning hours on February 22, 2009, engaged in a dance party inside the club.

As such, it is clear that Frey, The Dravecz Corporation and The Down Low were not deprived of the use and enjoyment of the property.[4] Accordingly, we reject The Down Low's argument that the trial court should have awarded an 8 month credit for the period between August 22, 2008, the date of the preliminary injunction order, and April 24, 2009, the date of the final injunction and order.

Next, The Down Low argues that Allentown may not obtain injunctive relief predicated upon violations of the Liquor Code. The Down Low points out that it has never been cited for a Liquor Code violation and it does not possess a Liquor License; thus, jurisdiction under the Liquor Code is not appropriate in this matter. More importantly, The Down Low had no knowledge and did not condone the sale of liquor on its premises by Sanchez in 2007. The Down Low contends that it is not arguing that the Liquor Code only subjects liquor licensees to its jurisdiction but instead is arguing that the Liquor Code clearly intended that Section 491 of the Liquor

3. The trial court sitting in equity is the ultimate finder of fact and, especially, where credibility is concerned its findings are entitled to great weight. *Moscatiello v. Whitehall Borough,* 848 A.2d 1071 (Pa.Cmwlth.2004), *petition for allowance of appeal denied,* 587 Pa. 697, 897 A.2d 459 (2006).

4. We note that the trial court, in the August 22, 2008 preliminary injunction order explained why it denied Allentown's request that the premises be padlocked. The trial court specifically stated that the order did not prohibit other lawful uses of the premises.

Code, 47 P.S. § 4–491,[5] apply as the Section title indicates to "Unlawful acts, relative to liquor, alcohol and liquor licensees."

The Down Low contends further that it has not conducted a continuing public nuisance at a place where intoxicating beverages are manufactured, sold, furnished or possessed. The Down Low argues that Allentown is attempting to connect criminal acts reported in a wide ranging geographic area to the club that not only does not allow alcohol to be brought into the business but has taken extreme and exhaustive measures to ensure that no alcoholic beverages are permitted upon the premises at any time. The Down Low argues that the evidence presents an honest portrayal of how it operates and the level of security used in screening its patrons. The Down Low contends that none of the acts found by the trial court to be a nuisance were interwoven with the sale or consumption of alcohol as would be found at a licensed establishment.

■ It is clear from the plain language of Section 611 of the Liquor Code that the statute makes no distinction between licensed and unlicensed establishments. As previously determined by the Superior Court, "[t]here is nothing in [Section 611] of the code or in the history of its enactment which limits its applicability to non-licensees." *Commonwealth v. Keystone Sign Co.*, 355 Pa.Super. 562, 513 A.2d 1066, 1067 (1986) (quoting *Commonwealth v. Chassey's Tavern*, 59 Pa. D. & C.2d 262, 263 (1973)). Accordingly, Section 611 applies to both licensed and unlicensed establishments. Therefore, Allentown properly brought an equity action pursuant to Section 611 of the Liquor Code, for injunctive relief against The Down Low, alleging that the club was a nuisance based on the sale of alcohol in violation of the Liquor Code.

■ In addition, the trial court's finding that alcohol was possessed and sold at The Down Low without a liquor license is supported by substantial evidence. The trial court found that alcohol was served at The Down Low in 2004 resulting in the criminal conviction of the person who sold the liquor and that Frey knew about the sale. The trial court found that Frey had the key to the locked refrigerator which contained the alcohol that was sold in 2004.

Furthermore, while The Down Low contends that it had no knowledge and did not condone the sale of liquor on its premises on several occasions by Sanchez in 2007, the trial court specifically found otherwise. The trial court found that alcohol was repeatedly sold in 2007 to Officer Jackson and rejected Frey's testimony that he had no knowledge of such sales.

Notwithstanding the fact that the foregoing findings by the trial court are sufficient to support the trial court's determination that The Down Low constituted a nuisance pursuant to Section 611 of the Liquor Code, we now turn to The Down Low's argument that the trial court erred by finding that it constituted a nuisance based on criminal acts which occurred inside and around the immediate vicinity of the club. The Down Low contends that it cannot be deemed a nuisance based on criminal acts that were not connected to the sale of alcohol. The Down Low argues that its establishment is not the same as a

---

**5.** Section 491 of the Liquor Code governs unlawful acts relative to liquor, alcohol and liquor licenses. It is unlawful, pursuant to Section 491, "[f]or any person, by himself or by an employe or agent, to expose or keep for sale, or directly or indirectly, or upon any pretense or upon any device, to sell or offer to sell any liquor within this Commonwealth, except in accordance with the provisions of [the Liquor Code] and the regulations of the [Liquor Control Board]." 47 P.S. § 4–491.

licensed establishment where the sale of alcohol commonly attracts criminal-element patrons.

Our Supreme Court has held that where " 'the evidence is clear and, indeed, so found by the Trial Court, that there was a causal relationship between the deplorable situation outside the premises and what went on inside . . .' it is an abuse of discretion not to grant the injunction." *Commonwealth v. Graver*, 461 Pa. 131, 135, 334 A.2d 667, 669 (1975) (quoting *Commonwealth v. Tick, Inc.*, 427 Pa. 120, 125, 233 A.2d 866, 868 (1967)). The Superior Court has held that a court may consider violations of the crimes code when deciding whether the closure of an establishment as a nuisance pursuant to Section 611 of the Liquor Code is proper. *Commonwealth v. Sal–Mar Amusements, Inc., t/d/b/a Vanity*, 428 Pa.Super. 321, 630 A.2d 1269, 1273 (1993).

Therefore, it does not matter whether the criminal activities or incidents that occurred are connected to the sale of alcohol by a licensed or unlicensed establishment. The question to be resolved is whether there was a causal connection between the criminal acts and the operation of The Down Low. The trial court found that there was such a causal connection and it is not within this Court's province to reweigh the evidence or disturb the trial court's credibility determinations. Accordingly, the trial court did not abuse its discretion by considering the criminal activities that occurred inside and in the immediate vicinity of The Down Low as additional support for its determination that The Down Low constituted a nuisance.

Finally, The Down Low argues that this litigation is void *ab initio* because it was not authorized by the mayor of Allentown as required by the Optional Home Rule Charter. The Down Low argues that at no time did the mayor authorize the filing of this equity action. All filings, including the complaint were executed by the Assistant City Solicitor. The Down Low contends that by permitting the City Solicitor's office the discretion to bring this prosecution on his own, the litigation was void *ab initio*. We disagree.

The record in this matter shows that The Down Low's contentions are factually inaccurate. The mayor was asked during the course of this litigation whether he authorized the filing of the instant equity action. The mayor testified that he was aware of this action and that he agreed that it was the best course of action to address the concerns with The Down Low. *See* Certified Record, Defendant's Exhibit 12, Deposition of Edwin E. Pawlowski at p. 68. The mayor specifically testified that he authorized and approved the recommendation to file the equity action. *Id.* Accordingly, we reject The Down Low's contention that this litigation was void *ab initio* due to the mayor's failure to authorize the filing of this equity action.

The trial court's April 24, 2009 final injunction and order is affirmed.

### ORDER

AND NOW, this 12th day of March, 2010, the Final Injunction and Order of the Court of Common Pleas of Lehigh County, dated April 24, 2009, entered at No. 2008–C–1023, is affirmed.