George BARCIA, Appellant

v.

Robert FENLON, James Ritter, Stepha-
nie Przebieglec, Oscar Woerlein and
Diane Decker, individually and t/d/b/a
Winona Lakes Property Owners Asso-
ciation, Inc. and Winona Lakes Prop-
erty Owners Association, Inc.

Commonwealth Court of Pennsylvania.

Argued Oct. 20, 2011.
Decided Feb. 2, 2012.

John J. Miravich, Exton, for appellant.

Holly B. Conway, Stroudsburg, for appellee Winona Lakes Property Owners Association, Inc.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

George Barcia (Barcia), a member of the Winona Lakes Property Owners Association (Association), appeals the Order of the Court of Common Pleas of Monroe County (trial court) denying Barcia's Motion for Post–Trial Relief (Motion), thereby in effect denying Barcia's Complaint which sought to enjoin Robert Fenlon, Stephanie Przebieglec, James Ritter, Anthony Valentino,[1] Oscar Woerlein and Diane Decker (collectively, Defendants) from acting as members of the Board of Directors of the Association (Board), and dismissing Barcia's Complaint, which sought similar permanent injunctive relief. Barcia chiefly contends that the trial court erred in not granting his Motion to remove the Defendants from the Board because the majority of the members who attended the special meeting voted to remove the Defendants. The Association's by-laws (By-laws) do not provide for the use of proxy votes, and Barcia argues that the proxy votes can, therefore, not be counted.

The following are the facts of the case as stipulated by the parties and found by the trial court on the basis of joint exhibits.[2]

1. We note that this individual's name was omitted from the caption of Barcia's Notice of Appeal.

2. The reason for stipulated facts and exhibits in lieu of a trial was described by the trial court thusly:

On June 8, 2010, the date scheduled for a preliminary injunction hearing, [Barcia], most if not all of the individual defendants, the attorneys for all parties, and what seemed to be a large number of Association members appeared and entered the courtroom. Before the hearing convened, the attorneys asked to speak with the undersigned. During the discussion, the attorneys requested that they be permitted to present a stipulation of facts on the record, but in chambers. The request was made for two reasons. First, counsel represented that the disputes between the competing factions had escalated to the point where a

The Association was founded prior to the enactment of the Uniform Planned Community Act (the Act), 68 Pa.C.S. §§ 5101–5414. Pursuant to the Act, certain of its provisions apply to homeowners' associations founded before the enactment of the Act; other provisions of the Act do not apply to homeowners' associations unless adopted as part of an association's by-laws. Section 5102(b)-(b.1) of the Act, 68 Pa.C.S. § 5102(b)(b.1). Barcia is a member of the Association.[3] At the time this suit was initiated, and during the events discussed, the Defendants composed a majority of the Board. The Association has a geographically diverse membership, with many members having primary addresses in other states. Thus, the Association traditionally has conducted voting by mail-in ballot, and is specifically required to do so in certain circumstances by the Association's By-laws. Sometime prior to May 16, 2010, more than 15% of the members of the Association submitted a Request for Special Meeting of the Owner–Members in Good Standing (Meeting Request), circulated by Barcia, pursuant to the By-laws. The purpose of the May 16, 2010 meeting

(Meeting), according to the Meeting Request, was to "remove Members of the Board of Directors in accordance with [Section 5303(f) of the Act,] 68 Pa. C.S.[ ] § 5303(f) [4] Removal of members." (Meeting Request at 1, R.R. at 66a.) Prior to the Meeting, the Board sent out a solicitation for proxies, asking members to sign a letter giving their proxies to Stephen Foster (Foster), a member of the Association. This solicitation stated that members had to be present to vote at the Meeting. However, the letter also stated that members could vote by proxy. Approximately 219 members gave their proxies to Foster. Barcia and others who wished to remove the Defendants from the Board also solicited proxy votes.

The Meeting of the Association was held on May 16, 2010 and a quorum of the Association's members was present. Immediately before the Meeting opened, counsel for Barcia objected to the Board that proxy votes should not be allowed because there was no provision in the By-laws for proxy voting. The Board rejected the argument that proxy votes were not

---

physical altercation, requiring police response, had occurred. Counsel wanted to calm the situation and prevent further eruptions by avoiding a contested hearing in the courtroom while emotions were still high. Second, the attorneys agreed that a full hearing was not necessary since they had discussed and largely reached agreement on a stipulated set of facts and a limited legal issue that could be decided based on the stipulation and briefs.
(Trial Court Op. at 4–5 (citation omitted) (footnote omitted).)

3. As the trial court notes in its opinion, there has been internecine strife between a minority faction of the Board, represented by Barcia, and a majority faction, represented by the Defendants. Among other things, one faction or another has sought at various times to remove members from the Board and amend portions of the By-laws relating to the removal of Board members. The trial court neatly

summarizes this history at pages 2–4 of its opinion. This history is notable in that it demonstrates that neither party is inexperienced in the matter of attempting to remove Board members or dealing with the Association's By-laws.

4. Section 5303(f) provides:

(f) Removal of members.—Notwithstanding any provision of the declaration or by-laws to the contrary, the unit owners, by a two-thirds vote of all persons present and entitled to vote at any meeting of the unit owners at which a quorum is present, may remove any member of the executive board with or without cause, other than a member appointed by the declarant.
68 Pa.C.S. § 5303(f). Section 5303(f) was *neither* made retroactive by Section 5102(b)-(b.1) of the Act (setting forth which provisions of the Act apply retroactively), nor was it adopted as part of the By-laws.

permissible and conducted the vote to remove Defendants from the Board. With the proxy votes being counted, the motions to remove the Defendants failed.[5] The parties stipulate that if the proxy votes had not been counted, the motions to remove the Defendants would have succeeded. It is notable that Barcia also cast proxy votes during the Meeting. The Defendants continued to serve on the Board following the Meeting.

Barcia filed his Complaint on June 2, 2010. In the Complaint, Barcia alleged that, because the Association's By-laws do not allow proxy voting, the proxy votes cast at the Meeting were invalid and the motions to remove the Defendants passed. Therefore, Barcia requested that the actions taken by the Defendants, as members of the Board, after the Meeting be declared void and that the trial court declare that the Defendants are not members of the Board. Barcia also sought preliminary injunctive relief of a similar nature. After stipulation of the facts and exhibits by the parties, the trial court denied Barcia's Motion for Preliminary Injunction and dismissed his Complaint. Barcia filed his Motion, which the trial court also denied, and Barcia appealed to this Court.[6] Regarding the merits of the appeal, the trial court noted that it was not determining that proxy voting was permitted by statute or under the By-laws. Rather, because Barcia was seeking equitable relief the trial court determined that, under equitable principles, after requesting a Meeting to remove the Defendants pursuant to a section of the Act that the Association had not adopted (Section 5303(f)), soliciting proxy votes himself, and only objecting to proxy votes at the last minute, Barcia was equitably estopped from arguing that the proxy votes could not be counted. Alternately, the trial court held that, even if proxy votes could not be allowed, the proper equitable remedy would not be to remove the Defendants from the Board but to nullify all the votes taken at the Meeting. We now address Barcia's appeal to this Court.[7]

Before this Court Barcia argues that pursuant to Section 5759(a) of the Nonprofit Corporation Law of 1988 (Nonprofit Law), 15 Pa.C.S. § 5759(a), and the By-laws, proxy voting is not permitted and, therefore, the Defendants were, in fact, removed as a result of the votes at the Meeting. Defendants, for their part, raise the additional argument that the matter is now moot because "[t]here have been subsequent elections for the Board of Directors since the filing of this action." (Defendants' Br. at 7 n. 1.)

---

5. Approximately 394 votes were cast: 147 by members present at the Meeting and 247 by proxy.

6. In its 1925 opinion, the trial court urges this Court to quash Barcia's appeal as an appeal from a non-final order, because, although the trial court had denied Barcia's Motions for Preliminary Injunction and Post–Trial Relief, judgment had not been entered in the matter. This issue was resolved by Order of this Court dated February 3, 2011, directing Barcia to enter judgment on the trial court's verdict. Barcia complied, as reflected by the February 14, 2011 docket entry in this matter; therefore, this Court has an appeal of a final order before it.

7. This Court's review of a trial court's determination regarding a permanent injunction "is limited to determining whether the trial court.abused its discretion or committed an error of law." *City of Allentown v. Down Low Nightclub*, 993 A.2d 331, 335 n. 2 (Pa. Cmwlth.2010). "This Court's scope of review of the trial court's ruling on post[-]trial motions is limited. In general this Court will not disturb the trial court's ruling unless the court manifestly abused its discretion or committed an error of law that affected the outcome of the case." *Lower Makefield Township v. Lands of Dalgewicz*, 4 A.3d 1114, 1116 n. 2 (Pa.Cmwlth.2010).

■ We first address Defendants' argument that this matter is moot. Barcia's Complaint seeks not only the removal of Defendants from the Board, but also seeks a declaration that acts taken by the Board following the Meeting be declared void. (Complaint, Wherefore Clause subsection (b), R.R. at 11a; Barcia's Post–Argument Status Report at 2, November 7, 2011.) In addition, one of the Defendants, Diane Decker, is still serving the term from which she would have been removed by the vote at the Meeting. (Defendants' Post–Argument Status Report, November 7, 2011.) Therefore, we hold that Barcia's appeal to this Court is not moot.

■ We next address the issue of whether any of the Defendants were removed from the Board as a result of the votes taken at the Meeting. Barcia's argument is as follows. Section 5759(a) of the Nonprofit Law states that proxy voting by members of a non-profit corporation is only allowed if permitted by the corporation's by-laws. Because the Association never adopted Section 5310 of the Act,[8] 68 Pa. C.S. § 5310, and the By-laws do not provide for proxy voting, the issue of proxy voting by the Association is governed by the more general rule of Section 5759(a) of the Nonprofit Law, which is applicable to all non-profit corporations and prohibits proxy voting. Therefore, the proxy votes cast at the Meeting may not be counted. While the Defendants argued before the trial court, and the trial court agreed, that it would be inequitable not to count the proxy votes because the Meeting Request stated that the Meeting was being held pursuant to Section 5303(f) of the Act,[9] and both sides solicited proxy votes, Barcia argues that equity may not override the provisions of statutory law that govern non-profit corporations and homeowners' associations.

■ Barcia is correct that proxy votes could not properly be counted at the Meeting as a matter of law. Section 5759(a) of the Nonprofit Law permits proxy voting by a non-profit corporation only if proxy voting is allowed by the corporation's by-laws. The By-laws do not provide for proxy voting, and the Association has never adopted the more specific provision of Section 5310 of the Act. Therefore, per the Act and the Nonprofit Law, proxy voting could not be used at the Meeting. "All corporations, whether for profit or non[-]profit, are creatures of statute." *Sherman v. Yiddisher Kultur Farband,* 375 Pa. 108, 111, 99 A.2d 868, 869 (1953). Under corporate law, "a by-law acts as a contract among the members." *Weona Camp, Inc. v. Gladis,* 72 Pa.Cmwlth. 318, 457 A.2d 153, 154 (1983). This Court cannot disregard the Act and the By-laws and hold that proxy votes could permissibly be cast at the Meeting.

■ However, this does not end our inquiry. Barcia came to the trial court seeking equitable relief in the form of preliminary and permanent injunctions. "In-

---

8. Section 5310 of the Act provides for proxy voting by owners of units in a homeowners' community. Section 5310 was not made retroactive by Section 5102(b)-(b.1) of the Act nor was it adopted in the By–Laws.

9. Defendants argue that because the Meeting Notice stated the Meeting was to be held pursuant to Section 5303(f) of the Act, which is neither retroactive nor was adopted as part of the By–Laws, it was reasonable to believe that other aspects of the Act, such as proxy voting pursuant to Section 5310 would also be applicable to the Meeting. Barcia, for his part, agrees that the Meeting was not held pursuant to Section 5303(f), but was held, instead, pursuant to Section 5726(a) of the Nonprofit Law, 15 Pa.C.S. § 5726(a), which provides for removal of members of a board of directors by a non-profit corporation's members.

junctive relief, of course, is an equitable remedy available only in actions brought in equity . . . ." *Norristown Area School District v. A.V.,* 90 Pa.Cmwlth. 508, 495 A.2d 990, 992 (1985). Defendants argue that Barcia is estopped from seeking equitable relief because the Meeting Request stated that the Meeting was to be governed by Section 5303(f) and Barcia also sought proxy votes. Under the doctrine of unclean hands:

> [a] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue.

*Terraciano v. Department of Transportation, Bureau of Driver Licensing,* 562 Pa. 60, 69, 753 A.2d 233, 237–38 (2000) (citations omitted). For the reasons aptly summarized by the trial court, Barcia did not come to the trial court seeking equitable relief with clean hands:

> [Barcia] circulated a Request for Special Meeting that specifically referenced the Act. While [Barcia] is correct that the Association did not adopt the proxy voting procedures of the Act, the Act nonetheless allows proxy voting. After the special meeting was called, the Board actively and openly solicited proxy votes. The majority directors were not the only persons soliciting proxies. As indicated, [Barcia] presented a certificate of proxy for 37 proxy votes. In addition, [Barcia]'s wife and Mr. D'Arco [a minority director], both of whom were obviously aligned with [Barcia] and the minority faction, solicited and actually submitted proxy votes. In fact, the certificates they submitted specifically referenced the proxy voting provisions of the Act. While proxies were being solicited, nei-

> ther [Barcia] nor any other member of the Association lodged an objection to the proxy voting procedure. It was not until immediately before or at the beginning of the meeting that [Barcia], through his attorney, objected to the use of proxies. Of course, by that time: a) almost 250 Association members in good standing had given proxies that they reasonably believed would be effective; b) [Barcia] had had the opportunity to see which members were in attendance and had undoubtedly made his own assessment as to the likely outcome of the vote if proxies were disallowed; and c) *it was too late for members who had given proxies to attend the meeting in person . . . .*

> In short, [Barcia]'s call for the meeting referenced a statute that allows proxy voting. While the Association had not formally adopted a proxy voting bylaw, proxy voting is routinely used in corporate affairs and is permissible under the [Nonprofit Law] and the Act. Many members of the Association gave proxies which they believed valid . . . . [Barcia] did not lodge a timely, good faith objection to the use of proxies; rather, he waited until commencement of the meeting when asserting an objection would apparently lead to the result that he sought to achieve. Had [Barcia] truly wanted to raise a principled or legal objection to proxy voting, and preserve a legitimate equity-based challenge to the result of the meeting, he should have refrained from prompting and participating in the proxy process and lodged a timely objection. He did not. Instead, he continued the gamesmanship, the corporate and legal maneuvering, and the attempts at manipulation that both factions have unfortunately exhibited throughout their feud. Equity does not and should not countenance this type of gamesmanship.

(Trial Court Op. at 11–13 (emphasis added).) Because Barcia came to the trial court with unclean hands, the trial court was correct to deny equitable relief in the form of preliminary and permanent injunctions.

Although the trial court primarily rested its holding on the basis that equity required the counting of the proxy votes, we believe that, given the legal principles surrounding proxy voting discussed above, the proper equitable remedy is the trial court's alternative holding, that the vote held at the Meeting was a nullity and, as a result, none of the Defendants were removed from the Board. Under the circumstances described, and where the Meeting was advertised as being pursuant to Section 5303(f) of the Act, (Request for Special Meeting of the Owner–Members in Good Standing at 1, R.R. at 66a), which Barcia now argues did not govern the Meeting, (Barcia Br. at 12–13), and where both sides represented by their conduct that proxy voting would be permitted, (Receipt for Proxy Votes from Barcia, R.R. at 142a; Certificates to Appoint Proxy, R.R. at 143a–156a), were this Court to hold that the Meeting was properly held, we would disenfranchise those members who relied on these representations and submitted their votes by proxy. We decline to do so.[10]

For these reasons, this Court affirms the Order of the trial court.

### ORDER

**NOW,** February 2, 2012, the Order of the Court of Common Pleas of Monroe County is hereby **AFFIRMED.**

---

**10.** Barcia also raised the argument that the By-laws were violated when one member cast more than ten proxy votes for the Defendants.

Due to our holding that the Meeting was a nullity, we do not reach this argument.