IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barry Casper, Janet Beuerle, Jill : \
Campbell, Sharon Clancy, Thomas : \
Cochrane, Steven Dawson, Thomas : \
Dempster, Elizabeth Diehl, Deborah : \
Evangelou, William P. Everett, : \
Joseph M. Favoroso, Vanessa Fiori, : \
Barbara Garwood, Kristen Gibboni, : \
Frances Grous, Francesca F. Haller, : \
Warren Harner, Timothy A. Hellings, : \
Renee Kilgarriff, Marisa Krepich, : \
Evan Lambros, Catherine Mandzy, : \
Therese M. Marshall, Joseph J. : \
Mitchner, Erika Montero, Joseph : \
Montero, Mandzy Orest, Donna : \
Parell, Rochelle A. Porto, Anthony : \
Romagnole, Thomas Sasse, Sally A. : \
Schlotter, Christopher Sofield, : \
Audrey Strein, Gail C. Thibodeau, : \
Jamie Tromba, Nicholas Tromba, : \
Lisa Von Deylen, David J. Whyno, : \
Edward T. Williamson, Andrea A. : \
Winstanley, Elizabeth Youse, and : \
Robert A. Ziff, : \
               Appellants : \
 : \
        v. :    No. 769 C.D. 2024 \
 :    Argued: June 3, 2025 \
 : \
Bucks County Republican : \
Committee, a/k/a Bucks County : \
Republican Alliance, David R. : \
Breidinger, Treasurer of the Bucks : \
County Republican Committee, a/k/a : \
Bucks County Republican Alliance, : \
Joseph A. Cullen, Jr., Vice Chair of : \
the Bucks County Republican : \
Committee, a/k/a Bucks County : \
Republican Alliance, Joseph Pizzo, : \
Secretary of the Bucks County : \
Republican Committee, a/k/a Bucks : \
County Republican Alliance, Patricia : \
Poprik, Chair of the Bucks County :

Republican Committee, a/k/a Bucks : 
County Republican Alliance, : 
Republican Federal Committee of : 
Pennsylvania, Republican Party of : 
Pennsylvania, a/k/a Republican State : 
Committee, a/k/a Republican State : 
Committee of Pennsylvania, Colleen : 
Strunk, Asst. Secretary/Treasurer of : 
the Bucks County Republican : 
Committee, a/k/a Bucks County : 
Republican Alliance, Lawrence : 
Tabas, Chairman of the Republican : 
Federal Committee of Pennsylvania, : 
and/or the Republican Party of : 
Pennsylvania, a/k/a the Republican : 
State Committee, a/k/a PAGOP :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE MICHAEL H. WOJCIK, Judge (P.)
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                   FILED: September 16, 2025

Appellants, members of the Bucks County Republican Committee (Committeepersons), have appealed the order of the Bucks County Court of Common Pleas (trial court) that dismissed their complaint, which seeks to have the election conducted by the Bucks County Republican Committee a/k/a Bucks County Republican Alliance (County Committee) to choose its executive committee declared null and void. In dismissing the complaint, the trial court sustained the preliminary objections filed by the County Committee and its executive committee, and by the Republican Party of Pennsylvania (PAGOP) and its chairman, Lawrence Tabas (Tabas). The trial court held that it lacked subject matter jurisdiction because the complaint concerned an intra-party matter. On appeal, Committeepersons argue that the County Committee's election procedures violated membership voting rights

2

secured by the Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law),[1] or, in the alternative, the Pennsylvania Uniform Unincorporated Nonprofit Association Law (Nonprofit Association Law).[2]  Committeepersons argue that political parties are not exempt from either statute and, thus, the trial court erred in dismissing their complaint.  We reverse in part, vacate in part, and remand the matter to the trial court for further proceedings.

**Background**

On January 9, 2023, Committeepersons filed an ethics complaint with the PAGOP, asserting that the voting procedures used by the County Committee to elect its executive committee in June of 2022 were illegal.  Thereafter, Committeepersons filed a civil complaint against the County Committee and the executive committee elected in June of 2022, namely, Patricia Poprik (Chair), Joseph A. Cullen, Jr. (Vice Chair), Joseph Pizzo (Secretary), David R. Breidinger (Treasurer), and Collen Strunk (Assistant Secretary/Treasurer) (collectively, "Executive Committee"); the PAGOP and Tabas; and the Republican Federal Committee of Pennsylvania.

The complaint alleges that the County Committee employed unlawful proxy and rollcall voting at the meeting of June 25, 2022, at which the members elected the Executive Committee.  As required by Section 807 of the Pennsylvania Election Code (Election Code),[3] the County Committee filed bylaws with the Bucks

---

[1] 15 Pa. C.S. §§5101-6146.

[2] 15 Pa. C.S. §§9111-9139.

[3] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2837.  Section 807 of the Election Code states:

> There may be in each county a county committee for each political party within such county, the members of which shall be elected at the spring primary, or

County Board of Elections (Board of Elections). Those bylaws are dated June 24, 1972, but are "unsigned and appear[] to have been produced on a computer word processing system, which would not have been available in June of 1972." Complaint at 9, ¶2a; Reproduced Record at 121 (R.R. __).[4] Even so, the unsigned bylaws on file with the Board of Elections prohibit the use of either proxy or rollcall voting in the election of the Executive Committee. Accordingly, the County Committee's election of June 25, 2022, was a nullity under Section 5759(a) of the Nonprofit Corporation Law, 15 Pa. C.S. §5759(a), or, in the alternative, Section 9124 of the Nonprofit Association Law, 15 Pa. C.S. §9124. Uncertain about whether the County Committee is organized as a nonprofit corporation or a nonprofit unincorporated association, the complaint asserts that proxy voting is not permitted in a member meeting of either type of nonprofit unless expressly authorized by the governing rules of the organization. Complaint at 10, ¶2b n.7; R.R. 122.

The complaint asserts that the County Committee's lack of valid bylaws also violated the Election Code's requirement that the County Committee adopt governing rules that are "not inconsistent with law or *with the State rules of the*

appointed, as the rules of the respective parties within the county may provide. *The county committee of each party may make such rules for the government of the party in the county, not inconsistent with law or with the State rules of the party,* as it may deem expedient, and may also revoke, alter or renew in any manner not inconsistent with law or with such State rules, any present or future county rules of such party. *No such rules shall be effective until a certified copy thereof has been filed in the office of the county board of elections.* The members of all other party committees, and all other party officers whose election is required by the party rules, shall also be elected at the spring primary, in the manner provided by this act.

25 P.S. §2837 (emphasis added).

[4] Pennsylvania Rule of Appellate Procedure 2173 requires the pages of the reproduced record to be separately numbered with Arabic figures followed by a small "a." *See* Pa.R.A.P. 2173. Committeepersons followed this rule intermittently. This opinion uses the pagination as it appears in the reproduced record filed with this Court.

4

*party*[.]" Section 807 of the Election Code, 25 P.S. §2837 (emphasis added). The complaint alleges that because the PAGOP refused to act upon Committeepersons' ethics complaint, it has violated the PAGOP's bylaws.

In Count I, Committeepersons seek declaratory and injunctive relief against the County Committee and the Executive Committee, as well as an award of litigation costs and attorneys' fees. The prayer for relief states as follows:

> a. *That the [County Committee] did not, as of June 25, 2022, have any valid and enforceable bylaws or rules of government on file with the [Board of Elections].*
>
> b. That the [County Committee] does not now, nor since June 25, 2022, have any valid and enforceable bylaws or rules of government on file with the [Board of Elections].
>
> c. *That the election of the officers and executive committee of the [County Committee] held on or about June 25, 2022, is null and void and that the persons claimed to have been elected on that date, [the Executive Committee], do not validly hold such offices.*
>
> d. That the [County Committee] hold a meeting of all duly elected committee members, who were elected as of May 17, 2022, on or before at [sic] date to be set by the court, under the direction of the PAGOP, for the purpose of adopting new bylaws that are consistent with the law and the PAGOP Bylaws.
>
> e. That all [County Committee] members and executives appointed by defendant Poprik (Chair), be removed from office as having been invalidly appointed.
>
> f. That the [County Committee] hold a reorganization meeting as soon as practical after the adoption of new bylaws, but in no event later than a date to be set by the court, to elect officers and an executive committee in accordance with the new bylaws.
>
> g. A declaration that, until such time as the [County Committee] has elected such officers and an executive committee in accordance with the new bylaws, the PAGOP shall oversee its operations, management and all statutory functions.

h. That during such time as the PAGOP is overseeing the [County Committee], it may not appoint or otherwise install [the Executive Committee] to any position of authority, office or power within the [County Committee].

Complaint at 28-30, ¶79; R.R. 140-42 (emphasis added).

In Count II, Committeepersons seek declaratory and injunctive relief against the PAGOP and Tabas as well as an award of litigation costs and attorneys' fees. The prayer for relief states as follows:

a. That the PAGOP shall immediately take over the control of the [County Committee] and oversee its operations, management and all statutory functions and appoint the following temporary officers: a chair, a vice chair, a secretary, a treasurer, an assistant secretary/treasurer within five (5) days of this court's entry of judgment.

b. That the [County Committee], under the direction of the PAGOP and the foregoing temporary officers, hold a meeting of all duly elected committee members, who were elected as of May 17, 2022, on or before a date to be set by the court, for the purpose of adopting new bylaws that are consistent with the law and the PAGOP Bylaws.

c. That the [County Committee], under the direction of the PAGOP and the foregoing temporary officers, hold a reorganization meeting as soon as practical after the adoption of new bylaws, but in no event later than a date to be set by the court, to elect officers and an executive committee in accordance with the new bylaws.

d. That during such time as the PAGOP is overseeing the [County Committee], it may not appoint or otherwise install [the Executive Committee] to any position of authority, office or power within the [County Committee].

Complaint at 35-36, ¶95; R.R. 147-48.

In Count III, Committeepersons allege that in January 2023, the County Committee fraudulently substituted the bylaws on file with the Board of Elections

with another set of bylaws that appear to have been prepared on a typewriter (in existence in 1972) and were signed. The complaint alleges that this substitution was done "to conceal the fact that the [County Committee] had no legal and enforceable bylaws" as of the meeting and election of June 25, 2022. Complaint at 37, ¶97c; R.R. 149. The prayer for relief requests "monetary damages in the amount of the fees paid to the [Board of Elections] for the fraudulent records obtained therefrom" and punitive damages. Complaint at 38; R.R. 150.

In response, the County Committee and the Executive Committee filed preliminary objections that follow:

> 1. *Lack of jurisdiction over the entire complaint* or alternatively, Count I;
>
> 2. Legal insufficiency of a pleading (demurrer) for Count I, *impropriety of declaratory judgment relief*;
>
> 3. Failure of a pleading to conform to law for Count I (aggregation of claims against the County Committee and the Executive Committee []);
>
> 4. Insufficient specificity of a pleading for Count I (as to claims against the Executive Committee []);
>
> 5. Legal insufficiency of a pleading (demurrer) for Count III (fraud);
>
> 6. Insufficient specificity of a pleading for Count III;
>
> 7. Nonjoinder of a necessary party for Count III; and
>
> 8. Legal insufficiency of a pleading (demurrer) for Counts I and III, improper request for attorneys' fees in Count I and attorneys' fees and punitive damages in Count III.

R.R. 249a-60a (emphasis added).

7

The PAGOP and Tabas also filed preliminary objections,[5] which follow:

> 1. *Lack of jurisdiction* over Count II;
>
> 2. Legal insufficiency of a pleading (demurrer) for Count II, *impropriety of declaratory judgment relief*;
>
> 3. Legal insufficiency of a pleading (demurrer) for Count II, improper request for attorneys' fees;
>
> 4. Failure of a pleading to conform to law for Count II (aggregation of claims against the PAGOP and Tabas); and
>
> 5. Insufficient specificity of a pleading for Count II (as to claims against Tabas).

R.R. 290a-97a (emphasis added).

After briefs and oral argument, the trial court sustained the preliminary objections, almost in their entirety.[6]

### Trial Court Decision

The trial court dismissed the entire complaint for lack of subject matter jurisdiction. It reasoned that because the complaint concerns the internal governance of a political party, it raised a matter beyond judicial review. In support, the trial court relied upon precedent from our Supreme Court and First Amendment[7] jurisprudence from the United States Supreme Court.

---

[5] The Republican Federal Committee of Pennsylvania adopted and incorporated by reference the preliminary objections of the PAGOP and Tabas. *See* R.R. 320a-24a.

[6] Specifically, the trial court sustained the first, second, third, and fourth preliminary objections filed by the County Committee and the Executive Committee; overruled their fifth, sixth, and seventh preliminary objections; and sustained in part and overruled in part their eighth preliminary objection. The trial court sustained the first, second, third, and fourth preliminary objections filed by the PAGOP and Tabas and overruled their fifth preliminary objection.

[7] U.S. CONST. amend. I. It states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

In *Bentman v. Seventh Ward Democratic Executive Committee*, 218 A.2d 261 (Pa. 1966), the plaintiffs sought reinstatement to their committee positions in a Philadelphia Democratic Party organization. At the time of their removal, vacancies for judicial office had occurred too late to be included on the primary election ballot, leaving the political parties and their respective committees responsible for these nominations. The Supreme Court concluded that the ousting of committee members who otherwise would nominate candidates for judicial office "bears such *a Direct and Substantial relationship* to the electoral process as to be a matter of judicial concern[.]" *Id.* at 269 (emphasis added). Accordingly, the Supreme Court reversed the lower court's holding that it lacked jurisdiction over the complaint.

In *Mohn v. Bucks County Republican Committee*, 259 A.3d 449 (Pa. 2021), the plaintiff filed a civil action to prevent his removal as a committeeperson. Noting that the committee was not about to choose candidates for public office in the general election, the common pleas court dismissed the complaint for lack of jurisdiction. The Supreme Court affirmed, explaining that the complaint had failed to identify "*some discrete acts or actions entailing state action to establish the required direct-and-substantial nexus*, such as the nomination of candidates for local judgeships raised in *Bentman*." *Id.* at 464-65 (emphasis added). It explained, further, that the committee was permitted to construe and apply its governing rules on disqualification of elected committee members without judicial interference.

Here, the trial court reasoned that the instant matter presented "a similar fact pattern" as in *Mohn*. Trial Court Pa.R.A.P.1925(a) Op. at 9. There was no imminent possibility that the Executive Committee would be nominating candidates for public office, as in *Bentman*. The complaint merely challenged the voting

9

procedures used to elect the Executive Committee, which did not bear a direct and substantial nexus to state action. Accordingly, the trial court held that judicial review of the election of the Executive Committee would constitute improper judicial interference.

The trial court acknowledged that the Nonprofit Association Law "applies to all nonprofit associations" including "political organizations, such as political parties." Trial Court Pa.R.A.P. 1925(a) Op. at 12 (citations and footnote omitted). However, it concluded that a court should not "intervene within a political party as [it] would a nonprofit association[]" because "political parties occupy a unique legal status that protects them from judicial intervention, with very limited exceptions." *Id*. at 13-14.

Finally, the trial court opined that to exercise jurisdiction over Committeepersons' complaint would violate the County Committee's right of association under the First Amendment to the United States Constitution. It reasoned that the "interest of the state must be compelling to justify the abridgement of a party's protected right of association, *even when a party's rules or decisions seemingly conflict with state law*." Trial Court Pa.R.A.P.1925(a) Op. at 16-17 (emphasis added). In other words, the fact that the County Committee's voting procedures were in "seeming conflict" with the Nonprofit Association Law was a matter of no consequence.

In support, the trial court cited *Cousins v. Wigoda*, 419 U.S. 477 (1975), where the United States Supreme Court held that a political party's constitutionally protected right to organize and govern its internal affairs was superior to the state's interest in enforcing its election code. Thereafter, in *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), the United States Supreme

10

Court concluded that a California statute governing the qualifications of a political party's committee members violated the associational rights of the political party. The trial court held that the "state cannot substitute its judgment for that of the party as to the *desirability of a particular internal party structure*, even if it views a particular party expression as unwise." Trial Court Pa.R.A.P.1925(a) Op. at 18 (citing *Eu*, 489 U.S. at 233) (emphasis added). The County Committee argued that to allow the complaint to proceed would "inject the judiciary into purely political matters," in contravention of the ruling in *Mohn*, 259 A.3d at 459. County Committee Brief to Trial Court at 14; R.R. 279a. The trial court agreed.

The trial court granted leave to Committeepersons to file an amended complaint within 60 days of its order to specify "the necessary and required direct and substantial nexus to a public function in some other substantially different theory or action or manner than what have been addressed in their pleadings[.]" Trial Court Decision and Order, 6/7/2024, at 10.[8] Instead, on June 11, 2024, Committeepersons filed a praecipe to have their complaint dismissed with prejudice and that the June 7, 2024, order be made final. Thereafter, on June 12, 2024, Committeepersons appealed to this Court.

---

[8] In their preliminary objection based on improper aggregation of claims, the County Committee and the PAGOP asserted that the complaint did not specify which conduct was attributed to the County Committee as a whole and which conduct was attributed to the Executive Committee officers as individuals. The same argument applied to the PAGOP and Tabas. At oral argument before the trial court, Committeepersons claimed that they did not seek to sue the Executive Committee officers and Tabas in their individual capacities and would stipulate to remove those averments from the complaint. Hearing Transcript (H.T.), 4/29/2024, at 27-28; R.R. 65a-66a. Thus, the trial court also granted leave to Committeepersons to amend their complaint in this regard.

11

**Appeal**

On appeal,[9] Committeepersons raise four issues for our review, which we combine into two for clarity.[10] First, Committeepersons argue that the trial court erred in holding that it lacked jurisdiction over their complaint. Second, Committeepersons argue that the trial court erred in determining that their complaint aggregated claims against the County Committee and the Executive Committee, as well as against the PAGOP and Tabas.

---

[9] Our review of a trial court's order granting preliminary objections determines "whether the trial court committed legal error or abused its discretion." *Palmer v. Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008).

[10] Committeepersons raise four issues in the Statement of Questions Involved:

> 1. Whether the trial court erred as a matter of law in its determination that it lacked jurisdiction over [Committeepersons'] substantive claims that the Appellees failed to comply with the [] Election Code, [] the [Associations Code], 15 Pa. C.S. [§§101-9507], and/or the [] Nonprofit Corporation Law [], and/or the [] Nonprofit Association Law []?

> 2. Whether the [trial court] committed an error of law and abuse of discretion in its determination that [the County Committee's] status as an association that is a political party exempts it from the Pennsylvania jurisprudence applicable to all associations?

> 3. Whether the trial court erred as a matter of law in its determination that [the Committeepersons'] claims against [the County Committee], due to its status as an association that is a political party, are violative of [the County Committee's] First Amendment rights under the United States Constitution?

> 4. Whether the [trial court] committed an error of law and abuse of discretion in its determination that [Committeepersons'] complaint improperly aggregated claims against [the County Committee and the Executive Committee] and the PAGOP and [Tabas], where the allegations against both [parties] and their respective officers are based on concerted conduct or conduct by the [] organizations that could only have been accomplished through the officer[s] and placing the allegations against these parties into separate counts would only result in duplicative counts that would not assist the Appellees in understanding the claims against them?

Committeepersons Brief at 4-5. This opinion combines Issues Nos. 1 through 3 because all relate to subject matter jurisdiction, the central question in this appeal.

12

## I. Jurisdiction Over Complaint

In their first issue, Committeepersons argue that the trial court erred in holding that it lacked jurisdiction over their complaint. As is the case for all entities organized or maintained under the statutes of the Commonwealth, courts may act when the entity's "board has acted in bad faith, has grossly mismanaged the organization, or has engaged in an *ultra vires* act." Committeepersons Brief at 14 (citing *Anderson v. Colonial Country Club*, 739 A.2d 1118, 1123 (Pa. Cmwlth. 1999)). This is precisely the situation here because the proxy and rollcall voting methods imposed on members at the June 25, 2022, election of its Executive Committee were not authorized by the County Committee's bylaws. Indeed, the County Committee did not have valid bylaws. As such, the election violated the Nonprofit Corporation Law, 15 Pa. C.S. §5759, or the Nonprofit Association Law, 15 Pa. C.S. §9124.

Committeepersons argue that the trial court's reliance on *Mohn*, 259 A.3d 449, was misplaced because that case concerned a committeeperson's removal from office under presumably valid bylaws. In any case, *Mohn* recognized that judicial intervention in a political party's actions is appropriate where "there is a compelling state interest," *id*. at 458 n.13, and "[t]here can be no greater 'compelling state interest' than adherence to and compliance with the statutes under which an association comes into legal existence." Committeepersons Brief at 19. Judicial intervention is necessary "when an association violates the very laws under which it was formed[,]" *i.e.*, the Nonprofit Corporation Law or Nonprofit Association Law. Committeepersons Brief at 21. This precept is underscored in Section 807 of the Election Code, which states that "[t]he county committee of each party may make

13

such rules for the government of the party in the county, *not inconsistent with law or with the State rules of the party[.]*" 25 P.S. §2837 (emphasis added).

Committeepersons contend that the Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541, provides the mechanism to compel the County Committee to comply with the statutory requirements by which it was formed and continues to operate. In *Barcia v. Fenlon*, 37 A.3d 1 (Pa. Cmwlth. 2012), this Court concluded that proxy votes could not be counted under the Nonprofit Corporation Law because the bylaws of the homeowners' association did not authorize this manner of voting. 15 Pa. C.S. §5759. Accordingly, "the proper equitable remedy" was to declare the vote held at the association's meeting "a nullity[.]" *Barcia*, 37 A.3d at 7. Committeepersons argue that such a remedy is warranted here.

In response, the County Committee and Executive Committee argue that the trial court properly declined to exercise jurisdiction over the entire complaint. Courts may not interfere with the County Committee's right of association protected under the First Amendment to the United States Constitution, which "encompasses a political party's decisions about the identity of, and process for electing, its leaders." County Committee Brief at 8 (quoting *Eu*, 489 U.S. at 229) (emphasis in original omitted). *Bentman*, 218 A.2d at 269, involved a political party's "[d]irect and [s]ubstantial" role in the nomination of candidates for newly created judicial offices, which provided a direct nexus to state action. By contrast, the instant matter involves the election of the County Committee's Executive Committee, an intra-party matter. Committeepersons' complaint did not allege facts "to establish the required direct-and-substantial nexus," which is the prerequisite to the court's exercise of jurisdiction. *Mohn*, 259 A.3d at 459.

14

For their part, the PAGOP and Tabas argue that the trial court lacked jurisdiction over the complaint. Further, by seeking to compel the PAGOP and Tabas to take or refrain from performing certain actions, such as reviewing an ethics complaint, the complaint requests improper judicial intervention into the internal affairs of a political party.

In reviewing preliminary objections, all well-pleaded material facts are to be considered as true, and preliminary objections shall be sustained only where they are free and clear from doubt. *Podolak v. Tobyhanna Township Board of Supervisors*, 37 A.3d 1283, 1287 (Pa. Cmwlth. 2012). The complaint alleges that the County Committee lacks valid bylaws and, thus, its election of June 25, 2022, violated the Nonprofit Corporation Law or the Nonprofit Association Law, which require bylaws to authorize proxy or rollcall voting as the prerequisite to their use. The question is whether these alleged violations are beyond judicial review because it was a political party that committed them.

### a. Applicable Statutory Law

We start with a review of the statutes that govern Pennsylvania nonprofit organizations. The complaint alleges that the County Committee is either a nonprofit corporation or a nonprofit association.[11]

The Nonprofit Corporation Law governs any "domestic corporation not-for-profit," 15 Pa. C.S. §5102, and authorizes the nonprofit corporation to be incorporated

> *for any lawful purpose or purposes, including, but not limited to, any one or more of the following or similar purposes:* athletic; any lawful business purpose to be conducted on a not-for-profit basis; beneficial; benevolent; cemetery; charitable; civic; control

---

[11] In their briefs, the County Committee and the PAGOP describe the County Committee as a nonprofit association.

15

of fire; cultural; educational; encouragement of agriculture or horticulture; fraternal; health; literary; missionary; musical; mutual improvement; patriotic; *political*; prevention of cruelty to persons or animals; professional, commercial, industrial, trade, service or business associations; promotion of the arts; protection of natural resources; religious; research; scientific and social.

15 Pa. C.S. §5301(a) (emphasis added).  Further, the statute is intended

> *to provide uniform rules for the governance and regulation of the affairs of nonprofit corporations and of their officers, directors and members and of members of other bodies, regardless of the date or manner of incorporation or qualification, or of the issuance of any evidences of membership in or shares of a nonprofit corporation.*

15 Pa. C.S. §5106(a) (emphasis added).  Finally, the statute provides that "[v]oting by members of a nonprofit corporation *shall be only in person unless a bylaw adopted by the members provides for voting by proxy*."  15 Pa. C.S. §5759(a) (emphasis added).

In sum, the members of a nonprofit corporation must cast their votes in person, unless a duly adopted bylaw allows voting by proxy.  15 Pa. C.S. §5759(a).  A nonprofit corporation may be established for political purposes, 15 Pa. C.S. §§5102, 5301(a), and the Nonprofit Corporation Law is "intended to provide uniform rules for the governance and regulation of the affairs of nonprofit corporations and of their officers, directors and members and of members of other bodies[.]"  15 Pa. C.S. §5106.

A "nonprofit association" is defined by the Nonprofit Association Law as follows:

> An unincorporated organization consisting of two or more members joined together under an agreement that is oral, in record form or implied from conduct for *one or more common, nonprofit purposes*.  *The term does not include:*

16

(1) a trust;

(2) a marriage, domestic partnership, common law domestic relationship, civil union or other domestic living arrangement;

(3) an organization formed under any other statute that governs the organization and operation of unincorporated associations;

(4) a joint tenancy, tenancy in common or tenancy by the entireties, even if the co-owners share use of the property for a nonprofit purpose; or

(5) a relationship under an agreement in record form that expressly provides that the relationship between the parties does not create a nonprofit association.

15 Pa. C.S. §9112 (emphasis added). The comment elaborates on what is meant by "common nonprofit purposes" as follows:

> *The best reference point for what constitutes a nonprofit purpose is 15 Pa. C.S. §5301(a) which provides that nonprofit corporations may be incorporated for:*
>
>> ". . . any one or more of the following or similar purposes: athletic; any lawful business purpose to be conducted on a not-for-profit basis; beneficial; benevolent; cemetery; charitable; civic; control of fire; cultural; educational; encouragement of agriculture or horticulture; fraternal; health; literary; missionary; musical; mutual improvement; patriotic; *political*; prevention of cruelty to persons or animals; professional, commercial, industrial, trade, service or business associations; promotion of the arts; protection of natural resources; religious; research; scientific and social."

15 Pa. C.S. §9112, COMMENT (emphasis added). The comment also clarifies that the Nonprofit Association Law

> *covers* unincorporated philanthropic, educational, scientific, social and literary clubs, unions, trade associations, *political organizations*, *such as political parties*, churches, hospitals,

17

> neighborhood and property owner associations, and sports organizations such as Little League baseball teams.

*Id*.

Regarding the governance of nonprofit associations, the statute provides as follows:

> **(b) Procedural matters.--***The governing principles may provide for the*:
>
>> (1) calling, location and timing of member meetings;
>>
>> (2) notice and quorum requirements for member meetings;
>>
>> (3) conduct of member meetings;
>>
>> (4) taking of action by the members by consent without a meeting or by ballot;
>>
>> (5) participation by members in a meeting of the members by telephone or other means of electronic communication; and
>>
>> (6) *taking of action by members by proxy.*
>
> **(c) Absence of governing principles.--***If the governing principles do not provide for a matter described in subsection (b), customary usages and principles of parliamentary law and procedure apply.*

15 Pa. C.S. §9124(b)-(c) (emphasis added). The statute defines "governing principles" as "[t]he agreements, whether oral, in record form or implied from its established practices, that govern the purpose or operation of a nonprofit association and the rights and obligations of its members and managers." 15 Pa. C.S. §9112. Stated otherwise, "[g]overning principles are the equivalent of the articles of incorporation, *bylaws and agreements that govern the internal affairs of a nonprofit association*." 15 Pa. C.S. §9112, COMMENT (emphasis added). Finally, the statute "governs the operation in this Commonwealth of a nonprofit association *formed or operating in this Commonwealth*." 15 Pa. C.S. §9113(a) (emphasis added).

18

In sum, a nonprofit association consists "of two or more members joined together under an agreement" and "for one or more common, nonprofit purposes" and includes "political organizations, such as political parties[.]" 15 Pa. C.S. §9112 & COMMENT. As is the case for nonprofit corporations, proxy voting by members is allowed so long as it is authorized by "the governing principles" of the nonprofit association. 15 Pa. C.S. §9124(b)(6), (c).

Committeepersons' complaint alleges that the County Committee employed proxy and rollcall voting at the member meeting of June 25, 2022, where the Executive Committee was elected. The Nonprofit Corporation Law, 15 Pa. C.S. §5759(a), and the Nonprofit Association Law, 15 Pa. C.S. §9124, require member votes to be cast in person unless the members have adopted a bylaw or governing principle to allow a member to vote by proxy.

Two versions of the County Committee's bylaws of June 1972 are attached to the complaint. Exhibit 2 is a version of the bylaws that appears to have been produced on a typewriter and is alleged to have been filed with the Board of Elections in January 2023, after the June 2022 election of the Executive Committee. Exhibit 3 is a version of the bylaws that appears to have been produced on a computer word processing system and is alleged to have been on file with the Board of Elections as of June 2022. Complaint at 9, ¶2a n.3, 4; R.R. 121.

Rule V of the bylaws concerns "Meetings," and it includes Article 5, entitled "Proxies." Complaint, Exhibit 3 at 11; R.R. 203. Section A of Article 5 states that "[a]ny member of the County Committee shall have the power to substitute by proxy another member of the County Committee or Executive Committee member, including ex-officio members, from his Executive Committee district to act for him at any meeting of the County Committee." *Id*. Section C of

Article 5 states that "[p]roxies are not permitted at meetings for the elector (sic) of representatives to the Executive Committee." *Id.* The second version of the bylaws, allegedly not filed with the Board of Elections until January 2023, is identical except that the word "election" appears in place of the word "elector" in Article 5, Section C. Complaint, Exhibit 2 at 12; R.R. 185.

> Article 6 of Rule V, entitled "Voting," provides:
>
> Section A. Voting on all questions before the County Committee and Executive Committee shall be by roll call vote, or by Ayes and Nayes.
>
> Section B. *Voting on election of representatives to the Executive Committee shall be by ballot.*

Complaint, Exhibit 3 at 11; R.R. 203 (emphasis added). The same provisions appear in the version of the bylaws filed with the Board of Elections in January 2023. Complaint, Exhibit 2 at 12; R.R. 185.

The complaint alleges that the County Committee lacked valid bylaws or "governing principles" at the time of the Executive Committee election. The bylaws in Exhibit 3 were "unsigned and appear[] to have been produced on a computer word processing system, which would not have been available in June of 1972[.]" Complaint at 9, ¶2a; R.R. 121. The bylaws in Exhibit 2 are signed and appear to have been prepared on equipment available in 1972 but were not filed until after the June 2022 election took place. In the absence of valid bylaws, the default voting rules established in the Nonprofit Corporation Law or Nonprofit Association Law governed the June 2022 election of the County Committee's Executive Committee, *i.e.*, in-person voting by ballot.

The trial court acknowledged that the Nonprofit Association Law applies to political parties. On its face, then, the complaint states a claim that the June 25, 2022, election of the Executive Committee violated the Nonprofit

20

Association Law because the County Committee lacked bylaws to authorize proxy or rollcall voting of those present. However, the trial court concluded that the County Committee's "unique legal status" protects it "from judicial intervention" into an alleged violation of the Nonprofit Association Law. Trial Court Pa.R.A.P. 1925(a) Op. at 14.

We conclude that the trial court erred in its application of the relevant precedent.

### b. Case Law Precedent

Our Supreme Court has spoken on the jurisdiction of the courts "to intervene in the internal affairs of political parties." *Mohn*, 259 A.3d at 450. As noted by the trial court, the two leading cases are *Bentman* and *Mohn*. Both cases concerned the removal of committeepersons from their positions in a local political party. In both cases, the committeepersons were chosen in a general primary election to represent a district within their respective political parties, and they were removed from office on grounds that they had been insufficiently loyal to the party. As such, they did not qualify to serve in a party leadership position.

In *Bentman*, 218 A.2d 261, two committeemen were removed because they had worked for the nomination of a candidate for the U.S. Senate who had not been endorsed by the Philadelphia Democratic Party organization. This conduct took place before either was elected to the position of committeeman. The two filed a petition for a writ of mandamus to compel their reinstatement, which the common pleas court dismissed for lack of jurisdiction. Our Supreme Court reversed. It acknowledged the longstanding precedent that political parties govern themselves as purely private organizations. Accordingly, "the courts cannot step in to compose party wrangles, or to settle factional strife." *Id*. at 264 (quoting *Kearns v. Howley*,

21

41 A. 273, 275 (Pa. 1898)). However, in 1947 the legislature imposed certain public functions upon political parties, and thus, "the [c]omplete privacy in nature of party organization recognized by our courts in the past no longer exists." *Bentman*, 218 A.2d at 269. Given the state interest imposed by the legislature, the Supreme Court concluded that the complaint of the two committeemen raised a matter "amenable to judicial supervision" and remanded the matter for further proceedings. *Id*. Notably, the dissent in *Bentman* pointed out that a writ of mandamus was not the appropriate mechanism because a vacancy had not been declared by the Democratic Party organization. The dissent would have required the plaintiffs, on remand, to proceed in *quo warranto*.

Several decades later, our Supreme Court decided *Mohn*, 259 A.3d 449, which also involved the removal of a committeeperson who had worked against the election of a candidate endorsed by the political party. The common pleas court held that it lacked jurisdiction to enjoin the political party's hearing on the ethical charges against Mohn, and the Supreme Court agreed. In doing so, the Supreme Court clarified *Bentman*. Specifically, it held that to justify judicial interference in local intra-party affairs, the plaintiff must point to discrete acts "entailing state action to establish the direct and substantial nexus, such as the nomination of candidates for local judgeships raised in *Bentman*." *Mohn*, 259 A.3d at 459. The mere fact that a committeeperson is chosen in a general primary election does not establish the requisite state action.

The concurring opinion would have overruled *Bentman* entirely because the right to serve in party leadership is not a right conferred by statute. Further, the right of a political party "to control its own leadership is sacrosanct." *Mohn*, 259 A.3d at 471 (Wecht, J., concurring).

22

Committeepersons' complaint does not concern the sacrosanct right of a political party to control its own leadership, and it does not concern factional strife. It does not concern, as argued by the County Committee, "purely political matters." R.R. 279a. Here, we consider the single question of whether a political party must conduct membership votes in compliance with the statutes that govern all Pennsylvania nonprofit organizations. *See* 15 Pa. C.S. §5106(a) (statute applies to all nonprofit corporations "regardless of the date or manner of incorporation"); 15 Pa. C.S. §9113(a) (statute "governs the operation in this Commonwealth of a nonprofit association formed or operating in this Commonwealth").

*Bentman* and *Mohn* did not consider or address either the Nonprofit Corporation Law or the Nonprofit Association Law. Each case concerned whether persons elected to serve in a position of party leadership were qualified to serve under rules developed by the political party for the purpose of ensuring party loyalty, *i.e.*, a purely political matter. The trial court erred in its expansive application of *Mohn* to mean that political parties may operate in "seeming conflict" with the Nonprofit Association Law, Trial Court Pa. R.A.P. 1925(a) Op. at 16-17, even where the matter is completely devoid of ideological concerns. The issue of whether membership votes must be conducted in accordance with the nonprofit organization's governing statute and bylaws is entirely neutral and separate from the substantive policy questions that concern political parties.

Other state courts have concluded that political parties are not exempt from statutes that address their governance. *See, e.g.*, *Conrad v. Uinta County Republican Party*, 529 P.3d 482 (Wyo. 2023) (county Republican party lacked authority to allow outgoing officers to vote for central committee officers under applicable statute); *Terenzi v. Westchester County Committee of the Conservative*

23

*Party of New York State*, 653 N.Y.S.2d 483 (N.Y. Sup. Ct. 1996) (amendments to the rules of the county committee of the Conservative Party were nullified because they contravened the state's election laws); *Hart v. Sheridan*, 5 N.Y.S.2d 820 (N.Y. Sup. Ct. 1938) (proxies at meeting of the executive committee of the county committee of the Democratic Party could not be used in the absence of bylaws specifically authorizing proxy voting). In each case, the court rejected the argument that because the dispute involved an intra-party matter, the court should not intervene.

To dismiss a complaint in its entirety, the matter must be free from any doubt. *Dittman v. UPMC*, 196 A.3d 1036, 1043-44 (Pa. 2018). *Mohn* did not address the neutral question of whether a political party must conduct membership votes in accordance with the statutes under which it is organized and maintained. The trial court erred in concluding that *Mohn* was dispositive.

### c. First Amendment

In concluding that the County Committee was exempt from the Nonprofit Association Law, the trial court also relied on the right of association guaranteed by the First Amendment, which includes the right to disassociate. There is no question that the County Committee enjoys a right of association protected by the First Amendment, as do all political parties. However, the trial court gave an overbroad application of First Amendment precedent to Committeepersons' complaint.

In *Cousins*, 419 U.S. 477, the so-called Wigoda delegates challenged the refusal of the National Democratic Party Credentials Committee (Credentials Committee) to seat them at the 1972 Democratic National Convention. The Credentials Committee found that the Wigoda delegates, chosen in the Illinois state

24

primary election, did not meet the party's guidelines for "minority group participation," "women and youth participation," "existence of party rules," "adequate public notice of party affairs," "timing of delegate selection," and "slate-making." *Cousins*, 419 U.S. at 479 n.1. The Credentials Committee decided to seat other delegates, known as the Cousins delegates, who had been chosen at party caucuses in Chicago.

The Illinois state court enjoined the Cousins delegates from serving as delegates to the 1972 Democratic National Convention. The Illinois Appellate Court affirmed, reasoning that the choice of a delegate to represent Illinois at the National Convention was governed exclusively by the Illinois Election Code. As such, "[t]he interest of the state in protecting the effective right to participate in primaries is superior to whatever other interests the party itself might wish to protect[.]" *Cousins*, 419 U.S. at 482. After the Supreme Court of Illinois denied leave to appeal, the United States Supreme Court granted certiorari on the question of whether the state election statute or the National Political Party's rules should govern "the *qualifications and eligibility* of delegates to the Party's National Convention." *Cousins*, 419 U.S. at 483 (emphasis added).

The United States Supreme Court reversed. It acknowledged the state's objective was to have Illinois voters elect Illinois' delegates to the National Convention. However, the National Convention was free not to seat any delegates, regardless of how they were chosen. The state interest asserted by the Wigoda delegates did not justify the injunction because the nomination of the Party's candidates for the offices of President and Vice President of the United States was a matter in which the states have no "constitutionally mandated role[.]" *Cousins*, 419 U.S. at 489. The Supreme Court further reasoned that "[i]f the qualifications and

25

eligibility of delegates to National Political Party Conventions were left to state law," then the "states could establish the qualifications of its delegates to the various party conventions without regard to party policy, an obviously intolerable result." *Id*. at 490 (internal quotations omitted).

*Cousins* raised the question of whether a state election law could supersede a "National Political Party's rules in the determination of the *qualifications and eligibility of delegates* to the Party's National Convention." *Cousins*, 419 U.S. at 483 (emphasis added). By contrast, here, the provisions of the Nonprofit Corporation Law and Nonprofit Association Law relevant to member voting procedures are neutral. They do not have the potential to deprive the political party of the ability to qualify those elected to leadership positions in a political party before they are seated. *Cf. Cousins*, 419 U.S. at 483. They concern only the procedures by which the organization is governed. For example, the Nonprofit Corporation Law states that it is intended to "provide uniform rules for the governance and regulation of the affairs of nonprofit corporations and of their officers, directors and members and of members of other bodies[.]" 15 Pa. C.S. §5106(a).

It is useful to consider the precedent developed in the context of property disputes that have arisen in other nonprofit organizations that are protected by the First Amendment, *i.e.*, religious organizations. The First Amendment requires courts "to defer to church hierarchy" and, thus, courts lack jurisdiction to resolve ecclesiastical matters. *Chestnut Hill College v. Pennsylvania Human Relations Commission*, 158 A.3d 251, 261 (Pa. Cmwlth. 2017). However, "[s]tate courts have a legitimate interest in resolving disputes concerning ownership of church property." *In re Church of St. James the Less*, 888 A.2d 795, 804 (Pa. 2005).

26

The issue in *Church of St. James the Less* was whether the property of the church, a nonprofit corporation, was subject to a trust interest asserted by the Protestant Episcopal Church of the Diocese of Pennsylvania (Diocese). The 1846 corporate charter that established St. James the Less stated that the corporation would not alienate its property without consent of the Diocese. In 1997, St. James the Less purported to eliminate this restriction by merging into a new nonprofit corporation. The Diocese brought an action to have these corporate actions declared invalid. The common pleas court voided the merger and directed return of the church property to the Diocese. On appeal, the Supreme Court affirmed. In so holding, the Supreme Court applied the "neutral principles of law approach," which "'relies exclusively on objective, well-established concepts of trust and property law' by requiring courts to resolve property disputes according to the terms of a governing statute, the property deed, and any other document that expresses the parties' intentions regarding the ownership of the property." *Church of St. James the Less*, 888 A.2d at 805 (quoting *Jones v. Wolf*, 443 U.S. 602, 603 (1979)). The Supreme Court observed that because the neutral principles of law "were unaffected by religious concepts," this approach "promise[d] to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice." *Id.* (quoting *Jones*, 443 U.S. at 603). *See also Presbytery of Beaver-Butler of United Presbyterian Church in United States v. Middlesex Presbyterian Church*, 489 A.2d 1317 (Pa. 1985) (holding that courts should apply the neutral principles of corporation law that would be applied to nonreligious organizations to resolve a property dispute between a church and its central denomination).

Likewise, here, the trial court can decide whether the voting methods employed at the June 25, 2022, election were authorized by applying the neutral

27

principles of law that govern non-political organizations. It can examine the County Committee's bylaws and make findings on their validity in light of the provisions in the Nonprofit Corporation Law or the Nonprofit Association Law, as well as the Election Code. This exercise of jurisdiction does not require entanglement in questions of political "doctrine, polity, and practice." *Church of St. James the Less*, 888 A.2d at 805 (quoting *Jones*, 443 U.S. at 603).

*Bentman* and *Mohn* established that a political party's ability to qualify its leaders on purely ideological grounds is not a matter amenable to judicial intervention. However, neither case based its ruling on the First Amendment. Indeed, our Supreme Court noted that "we find it to be remarkable that no mention is made of the political party's constitutional right of association." *Mohn*, 259 A.3d at 458. Simply, neither case has established binding precedent on whether the First Amendment has insulated the County Committee from the terms of the Nonprofit Corporation Law or the Nonprofit Association Law.[12] Under the County Committee's expansive read of *Mohn*, it could adopt a bylaw expressly prohibiting proxy voting but then use proxy voting without any accountability to its members. This renders the Nonprofit Corporation Law and Nonprofit Association Law nullities.

---

[12] The gist of the County Committee's argument is that the Nonprofit Corporation Law and the Nonprofit Association Law are unconstitutional as applied to it by violating its First Amendment right under the United States Constitution to political association. The trial court ruled on this argument in favor of the County Committee while sustaining its preliminary objection based on a lack of jurisdiction. However, the County Committee is not permitted to raise a constitutional claim through preliminary objections. The grounds of a preliminary objection are expressly limited by the Pennsylvania Rules of Civil Procedure. *See* Pa.R.Civ.P. 1028(a).

The prerequisite to judicial review of a political party's action is a state interest. *Mohn*, 259 A.3d at 459. There is a state interest in having political parties conduct their member votes in a lawful manner.

First, the state has an interest in ensuring that control of a political party, or any organization operating under authority of state law, is not seized by illegal means, such as the use of unlawful voting procedures. Second, the state has an interest in property. As do churches, political parties hold property. They have bank accounts; they own or lease real estate; and they own a "brand," *i.e.*, the political party name. *See* Complaint, Exhibit 3 at 7; R.R. 199 (Rule III, Article 9 of the Bylaws, "Bank Accounts").

Committeepersons seek to have the election of the Executive Committee held on June 25, 2022, declared null and void. The Declaratory Judgments Act affords "relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa. C.S. §7541(a). *See also* Section 7533 of the Declaratory Judgments Act, 42 Pa. C.S. §7533 ("Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder."). This aligns with Section 5793(a) of the Nonprofit Corporation Law, which provides that "[u]pon application of any person aggrieved by any corporate action, *the court may hear and determine the validity of the corporate action*." 15 Pa. C.S. §5793(a) (emphasis added). "Corporation action" includes "[t]he *election*, *appointment*, designation or other selection and the

29

suspension, removal or expulsion of *members, directors*, members of an other body or *officers of a nonprofit corporation*." 15 Pa. C.S. §5791(a)(1) (emphasis added).

In *Barcia*, 37 A.3d 1, members of a homeowners' association voted on whether to remove certain directors from the association's board. The motion failed but would have succeeded had the proxy votes not been counted. An association member sought to enjoin those individuals from serving because the membership vote on their removal violated Section 5759(a) of the Nonprofit Corporation Law. The common pleas court denied the injunctive relief. On appeal, this Court agreed that proxy votes should not have been counted under Section 5759(a) because the bylaws did not authorize proxy voting.[13] We observed, however, that the appropriate remedy was not the removal of directors from the board but to nullify the votes taken at the membership meeting. *Barcia*, 37 A.3d at 7. Committeepersons seek to nullify the election of the Executive Committee on June 25, 2022, which is consistent with *Barcia*.[14]

Committeepersons' complaint does not concern the qualification or eligibility of the elected Executive Committee to serve but, rather, the voting methods employed at the election and whether they were authorized by valid bylaws. These are questions that involve the neutral principles of law set forth in the Nonprofit Corporation Law or the Nonprofit Association Law and do not risk entanglement in matters of political policy. The trial court erred in its holding that the First Amendment insulated the County Committee from the terms of the Nonprofit Corporation Law or the Nonprofit Association Law.

---

[13] We affirmed the common pleas court, however, based on its finding that the plaintiff came to court with unclean hands by casting proxy votes himself, which barred him from seeking equitable relief.

[14] This is not to say that all the remedies sought by Committeepersons are permitted under the Declaratory Judgments Act; this is an issue for the trial court to address on remand.

## Conclusion

For all the above-explained reasons, we hold that the trial court erred in holding that it lacked jurisdiction over Committeepersons' claims raised under the Nonprofit Corporation Law and the Nonprofit Association Law. Accordingly, we reverse the trial court's order dismissing Committeepersons' complaint for lack of jurisdiction. We vacate the trial court's order disposing of the remaining preliminary objections by the County Committee and the Executive Committee, and those filed by the PAGOP and Tabas as incorporated by the Republican Federal Committee of Pennsylvania, and remand the matter to the trial court to decide these preliminary objections in light of our holding.[15]

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judges Covey, Fizzano Cannon, and Wallace did not participate in the decision in this case.

---

[15] Accordingly, we do not address the second issue raised on appeal by Committeepersons.

31

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barry Casper, Janet Beuerle, Jill : 
Campbell, Sharon Clancy, Thomas : 
Cochrane, Steven Dawson, Thomas : 
Dempster, Elizabeth Diehl, Deborah : 
Evangelou, William P. Everett, : 
Joseph M. Favoroso, Vanessa Fiori, : 
Barbara Garwood, Kristen Gibboni, : 
Frances Grous, Francesca F. Haller, : 
Warren Harner, Timothy A. Hellings, : 
Renee Kilgarriff, Marisa Krepich, : 
Evan Lambros, Catherine Mandzy, : 
Therese M. Marshall, Joseph J. : 
Mitchner, Erika Montero, Joseph : 
Montero, Mandzy Orest, Donna : 
Parell, Rochelle A. Porto, Anthony : 
Romagnole, Thomas Sasse, Sally A. : 
Schlotter, Christopher Sofield, : 
Audrey Strein, Gail C. Thibodeau, : 
Jamie Tromba, Nicholas Tromba, : 
Lisa Von Deylen, David J. Whyno, : 
Edward T. Williamson, Andrea A. : 
Winstanley, Elizabeth Youse, and : 
Robert A. Ziff, : 
               Appellants : 
                : 
         v. :    No. 769 C.D. 2024
                : 
Bucks County Republican : 
Committee, a/k/a Bucks County : 
Republican Alliance, David R. : 
Breidinger, Treasurer of the Bucks : 
County Republican Committee, a/k/a : 
Bucks County Republican Alliance, : 
Joseph A. Cullen, Jr., Vice Chair of : 
the Bucks County Republican : 
Committee, a/k/a Bucks County : 
Republican Alliance, Joseph Pizzo, : 
Secretary of the Bucks County :

Republican Committee, a/k/a Bucks :
County Republican Alliance, Patricia :
Poprik, Chair of the Bucks County :
Republican Committee, a/k/a Bucks :
County Republican Alliance, :
Republican Federal Committee of :
Pennsylvania, Republican Party of :
Pennsylvania, a/k/a Republican State :
Committee, a/k/a Republican State :
Committee of Pennsylvania, Colleen :
Strunk, Asst. Secretary/Treasurer of :
the Bucks County Republican :
Committee, a/k/a Bucks County :
Republican Alliance, Lawrence :
Tabas, Chairman of the Republican :
Federal Committee of Pennsylvania, :
and/or the Republican Party of :
Pennsylvania, a/k/a the Republican :
State Committee, a/k/a PAGOP :

# **O R D E R**

AND NOW, this 16th day of September, 2025, the order of the Court of Common Pleas of Bucks County, dated June 7, 2024, in the above-captioned matter, is REVERSED in part and VACATED in part. We REMAND the matter to the Court of Common Pleas of Bucks County for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita